**FIRST METHODIST EPISCOPAL CHURCH SOUTH et al. v. ANDERSON.**

No. 12277.

Court of Civil Appeals of Texas. Dallas.

Nov. 13, 1937.

Rehearing Denied Dec. 11, 1937.

Alvin H. Lane, Worsham, Burford, Ryburn & Hincks, McNees & Roberts, and Monta R. Ferguson, all of Dallas, for appellants.

Austin S. Dodd, of Dallas, for appellee.

J. P. Miller, of Dallas, for administrator.

BOND, Chief Justice.

William Noble Anderson, as the sole heir of the estate of Laura M. Greenhalgh, deceased, instituted this suit against the devisees and legatees of the estate of John R. Greenhalgh, some of whom are the appellants herein. The suit was to recover the property in the hands of one Grady Niblo, as administrator de bonis non of said estate. Primarily, the plaintiff claimed that all the property inventoried by Rufus C. Porter, as executor of John R. Greenhalgh's estate and turned over to said administrator, before undergoing changes in course of administration, was the separate property of Mrs. Greenhalgh, and that, he, as her sole heir, was entitled to all of said property; and further, in the alternative, that under a proper construction of the will of John R. Greenhalgh, if in fact all the property listed was not the separate property of his wife, the personal property in fee and the life estate in the realty were bequeathed to her by said will, and, as her sole heir, appellee was entitled to the personal property; the real estate only vested, by the terms of the will, in the legatees and devisees.

The evidence bearing upon the issues involved in this appeal is, we believe, uncontradicted. John R. Greenhalgh and Laura M. Greenhalgh were married in the state of Illinois in 1876, and lived together as husband and wife until the husband's death in 1928. In November, 1900, they came to Texas, bringing with them about $9,000 in cash, which Mrs. Greenhalgh had inherited from the estate of her deceased father, and, with this fund, they purchased four pieces of property in the city of Dallas, known in the record as the courthouse property, a lot at the corner of Jefferson and Crawford streets, and two other pieces of property which are not directly involved in this suit. The deeds to the respective pieces of property were drafted to show that Mr. Greenhalgh was the grantee, and evidenced cash consideration paid by him for said property, but, in fact, the consideration was paid from the separate property of his wife.

In 1914, Mr. and Mrs. Greenhalgh left Dallas, and thereafter, until their deaths, lived as guests in the Rosalyn Hotel in Los Angeles, Cal. In 1919, while living in California, they executed to Rufus C. Porter a deed to the four pieces of property above mentioned, and simultaneously Porter executed to John R. Greenhalgh a deed to the courthouse and Jefferson-Crawford street properties, and to Mrs. Laura M. Greenhalgh the other two pieces of property. In each of the three deeds, the consideration is recited to be "$10.00 cash and other good and valuable consideration," and, in the deeds to Mr. Greenhalgh and to Mrs. Greenhalgh, respectively, a further recital that the consideration "is paid out of the separate and sole fund of the grantee herein and the property here conveyed is intended and hereby becomes the separate, sole and independent property of the grantee, free from all claims of every nature and every description of the spouse of the grantee herein." The record shows that no consideration was in fact passed between the parties for said deeds, and that Mr. Porter was acting merely as an intermediary to carry into effect the desires and expressed wishes of Mr. and Mrs. Greenhalgh, to make the respective pieces of property the separate property of the grantee.

In 1928, John R. Greenhalgh died, leaving a written will, dated January 15, 1926, which was duly probated in the county court of Dallas county. The will begins, as follows:

"Know All Men by These Presents: That I, John R. Greenhalgh, a citizen of the City and County of Dallas, State of Texas, being of sound and disposing mind and memory, and not acting under duress, menace, fraud or undue influence of any person whatsoever, do hereby make, publish and declare this my last Will and Testament, revoking all former Wills and codicils of whatsoever nature by me made, and declare this my said last Will and Testament in the manner following; that is to say:

"1. I give and bequeath to my wife, Laura M. Greenhalgh, all my personal effects of every nature. This gift is made without restriction or limitation of any nature whatsoever.

"2. I give and bequeath to my wife, Laura M. Greenhalgh, all the income of every nature of my estate during the life of the said Laura M. Greenhalgh, and after

her death my executor hereinafter named is hereby authorized and directed to sell within twelve months from her death all the property, both real and personal, which may belong to my estate at the death of the said Laura M. Greenhalgh, and distribute the proceeds thereof among the several legatees named herein as hereinafter directed."

Paragraphs 3–11 of the will give bequests of $1,000 each to eight named persons, one of whom was plaintiff. Paragraphs 12–20 provided for bequests ranging from $2,500 to $5,000 to named charitable institutions. The will then continued, as follows:

"21. If and for any reason it may become necessary or best, or if in the judgment of my executor, hereinafter appointed, and the said Laura M. Greenhalgh, my wife, that all or any portion of my property, and all of which is located in Dallas, Texas, should be sold during the life of the said Laura M. Greenhalgh, then the said Laura M. Greenhalgh and my said executor, hereinafter named, are hereby authorized and directed to sell and convey all or any part thereof and to reinvest the proceeds received from the sale of said property in interest bearing securities, such as may be approved of by my said executor and the said Laura M. Greenhalgh, and the revenues so derived from said interest bearing securities shall be paid to the said Laura M. Greenhalgh during her life.

"22. Should any legatee or devisee under this Will undertake to contest the validity of same, or any part thereof, or to prevent any portion of my estate from descending to the several legatees as herein provided, the said devisees or legatees so obstructing or contesting this Will, or any portion thereof, shall forfeit all the interest so devised, to said legatee or legatees, or devisee or devisees, and that portion of my estate so devised to said parties shall revert pro rata to the said above named devisees or legatees who shall assist in sustaining the apportionment and distribution of my estate as hereinabove provided.

"23. Should my estate prove not sufficiently large to pay all bequests in full after the death of my wife, as hereinabove set out, then I direct my said executor to pay in full from my estate to the several legatees mentioned in paragraphs 3, 4, 5, 6, 7, 8, 9, 10 and 11, the bequests mentioned therein, and to distribute the remainder pro rata among the several legatees mentioned

in paragraphs 12, 13, 14, 15, 16, 17, 18, 19 and 20; and should my estate be more than sufficient to pay all of the legatees or devisees the full amount which I have bequeathed to the several parties, persons and institutions hereinabove mentioned, then I desire and direct my executor to distribute pro rata the surplus, after paying all of said bequests, to the several charitable persons, parties and institutions mentioned in paragraphs 12, 13, 14, 15, 16, 17, 18, 19, and 20."

The will concludes with the designation of Rufus C. Porter as executor, and the customary witness clauses.

After the execution of the above will, on September 17, 1926, John R. Greenhalgh and Laura M. Greenhalgh sold the courthouse property to Dallas county, and $15,000 of the consideration received therefor was invested by John R. Greenhalgh in three interest-bearing vendor's lien notes in the sum of $5,000 each. Two of these notes, a cashier's check for $5,441.70, the proceeds of the other note, and the real estate at Jefferson and Crawford streets, valued at $12,000, was all the property shown by the original inventory of John R. Greenhalgh's estate, filed on June 15, 1928, in the probate court of Dallas county, and was there listed as the separate estate of the decedent. The inventory expressly recited that there was no community property.

In the course of administration, Rufus C. Porter, as executor, and Laura M. Greenhalgh, as beneficiary, under the terms of the will in question, sold the real estate situated on Jefferson and Crawford streets for the sum of $12,000. This sum, with the above interest-bearing vendor's lien notes and the cashier's check, were turned over to the executor; he collecting the interest due thereon and turning it over to Mrs. Greenhalgh, taking her receipt therefor, of which the following is typical: "Received of Rufus C. Porter, Executor of the Estate of John R. Greenhalgh, deceased, his check drawn on the American Exchange National Bank of Dallas, Texas, payable to the order of Laura M. Greenhalgh, in the sum of $300, said sum being the interest collected by the said executor on two certain promissory notes of $5,000.00 each, owned by the Estate of the said John R. Greenhalgh, and which interest so collected was due and payable on November 12, 1928. This interest is paid to me in accordance with the provisions of the

will of the said John R. Greenhalgh (signed) Laura M. Greenhalgh."

On September 4, 1930, after the estate had been under administration for more than a year, all claims paid, and the executor carrying out the terms of the will, Mrs. Greenhalgh filed a contest to the annual expenditure accounting of Mr. Porter as executor, prefacing her petition with the statement that she "is interested in said estate by reason of being the beneficiary for her life of said estate." This contest resulted in Mr. Porter resigning as executor, and, at the request of Mrs. Greenhalgh, Grady Niblo of Dallas, Tex., was appointed administrator de bonis non, and, as such administrator, filed in the court an inventory and appraisement showing all of the property left by Mr. Greenhalgh and turned over to him was his separate estate. In due course of administration, Mr. Niblo filed annual accountings in which he also related that all the property, both real and personal, left by Mr. Greenhalgh, the corpus of the estate in his hands, was his separate property, and that he collected the income therefrom and paid it over to Mrs. Greenhalgh, "as directed by the will," attaching thereto exhibit receipts signed by Mrs. Greenhalgh for such income.

Rufus C. Porter, a resident of the state of California, the executor named in the will of John R. Greenhalgh and the attorney who drafted the will, testified by deposition that, in conversation with Mr. and Mrs. Greenhalgh, he was informed that they were contemplating making their will which they wished him to draw, and that, before making the wills, they expressed the wish and determination to make a division of their property among themselves so that they could be free to will their respective property to whomsoever they pleased. He then explained how he prepared deeds as the result of which certain property was conveyed by John R. Greenhalgh and wife to him as trustee, and he in turn and on the same day executed deeds to them to their respective properties. The witness further testified that: "She (Mrs. Laura M. Greenhalgh) urged me to complete the division of the estate, between herself and husband John R. Greenhalgh, as soon as possible, so that she could have her part of the estate set aside to her, as she wanted to make a will and be in a condition to will all or any portion of her estate to any person or party she wished and she mentioned several times that she wanted to get her property so that she could convey all her property to her brother." He then explained the drafting of the will in question, which was done in the presence of Mr. and Mrs. Greenhalgh, and also drafted the will of Mrs. Greenhalgh. In her will, Mrs. Greenhalgh mentioned the division and partition of their properties, and declared that in such division her husband "has been well provided for during the remainder of his life." She bequeathed her husband nothing, and left the portion retained by her to the Dallas Trust & Savings Bank of Dallas, Tex., in trust, for designated devisees and legatees, making no mention of, or claim to, the property left by her husband. Mrs. Greenhalgh died in 1933, and from the date of the deeds, June 13, 1919, she assumed ownership, control, and management of the property deeded to her, and John R. Greenhalgh, with her knowledge, did likewise as to the property deeded to him; each making disposition of the respective pieces of property in their wills.

The case was submitted to a jury, and in response to special issues the jury found, in effect, that all the real property mentioned in this suit, the courthouse lot, the Jefferson-Crawford street property, and the other two pieces of property, were at the time of purchase the separate property of Mrs. Laura M. Greenhalgh, having been purchased with proceeds of sale of the wife's separate estate; that on June 13, 1919, by the partition and division deeds passing between Mr. and Mrs. Greenhalgh and Rufus C. Porter, Mrs. Greenhalgh thereby intended to make a gift to her husband of the courthouse lot and the Jefferson-Crawford street property; that Mrs. Greenhalgh, after the death of her husband, ratified the transfer and conveyance and acknowledged that all the property under administration belonged to the estate of John R. Greenhalgh. On motion for judgment, the trial court also found that all the property in the hands of the administrator was the separate property of John R. Greenhalgh, and construed his will so as to award to the plaintiff all of the personal property on hand at the time of the testator's death, directing that the personal legatees designated in paragraphs 3–11 of the will be paid their bequests in preference to legatees designated in succeeding paragraphs; accordingly, entered its judgment and taxed all costs of suit against the estate of John R. Greenhalgh, except an item of attorney's fee allowed to the attorney appointed by the court to represent

an individual legatee, taxing such fee against that share of the estate.

The two principal contentions, above mentioned, are properly presented here, by assignments and cross-assignments, for determination; the one being that all the property, both real and personal, inventoried by the executor before undergoing changes in the course of administration, was the separate property of Laura M. Greenhalgh, and that the deeds of 1919, passing between her and her husband and Rufus C. Porter to the real estate described in the deeds were ineffective to pass title out of Mrs. Greenhalgh, thus the property did not pass to the legatees named in the will of John R. Greenhalgh; and, the other being that, if such deeds passed the title, the will of John R. Greenhalgh, rightly interpreted, bequeathed all the personal property in fee and the real estate for life to his wife, with remainder to the other named beneficiaries. The first of these contentions was determined adversely to plaintiff by the trial court, and was decreed that all the property in the hands of the administrator must be distributed according to the terms of John R. Greenhalgh's will, therefore, in effect, holding that the deeds of 1919 effectively passed the separate property of Mrs. Greenhalgh, by gift, to the status of separate property of her husband; and the second contention was determined adversely to defendants; the court holding that, by the terms of the will of John R. Greenhalgh, all the personal property owned by the testator at the time of his death was bequeathed to Laura M. Greenhalgh in fee, leaving only, after her death, his real estate, to be divided among the various individual legatees.

Under the above holding, sufficient property is not available to pay all bequests, so the legatees first named in the will who are taken care of have not appealed; this appeal is being prosecuted by the various religious and charitable legatees named in the will who have been deprived of their bequests under the holding of the trial court.

Since this appeal was perfected, the plaintiff, William Noble Anderson, has died testate. His will has been duly probated in Dallas county, Tex., and his daughter, Mrs. Grace N. Niblo, wife of Grady Niblo, was named and has qualified as independent executrix and chief beneficiary. Hence, on motion, Mrs. Niblo is substituted as the appellee herein.

As shown from the record here presented, Rufus C. Porter, as executor of John R. Greenhalgh's estate, detained $15,000 of personal property from June 14, 1928, the date of his appointment as executor, and $12,000 in cash, the proceeds of sale of the Jefferson-Crawford street property, until he resigned as such executor in 1930; and that Grady Niblo, who succeeded him to the estate as administrator de bonis non, has detained the residue of the estate since May, 1930, amounting to $22,265.66 in cash. This suit was filed on April 30, 1934; Mrs. Laura M. Greenhalgh died in 1933.

In the original inventory filed by the said executor, all the property, both real and personal, the corpus of the estate here involved, was inventoried as the separate property of John R. Greenhalgh, the executor holding the same adversely to any claim of Laura M. Greenhalgh, other than that given to her by Mr. Greenhalgh's will. The executor asserted the exclusive title and ownership of the property listed to be in himself and in a manner converted it, as executor of said estate. Mrs. Greenhalgh was a party to that administration, and was laboring under no disability to commence and prosecute any cause of action which she might have had to recover the property. It cannot be said that the executor's possession was in trust for Mrs. Greenhalgh, other than that given her by the will of her husband.

In 1930, Rufus C. Porter resigned as executor, relinquishing all rights in the property to his successor, Grady Niblo. Then, in due course, Grady Niblo, as administrator, with full knowledge, consent, and acquiescence of Laura M. Greenhalgh, also inventoried, detained, and asserted title to the property coming into his hands as the separate property of John R. Greenhalgh's estate, claiming it adversely to Mrs. Greenhalgh, as did his predecessor, Rufus C. Porter. Manifestly, any cause of action which Mrs. Greenhalgh might have had to recover the property in the hands of the executor or the administrator would have been a suit in rem and could have been commenced and prosecuted at any time after the death of her husband. She lived five years in widowhood. The property, the executor, and the administrator were under the jurisdiction of the courts of Texas and were amenable to the courts' orders, judgments, and decrees.

Article 5526, R.S.1925 provides: "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions · or suits in court of the following description. * * * 2. Actions for detaining the personal property of another, and for converting such property to one's own use." Thus, under the facts of this case, while the appellee was entitled to have the will construed by the court, we believe, in all other respects, the suit was barred by the statute of limitation.

■ However, we are not compelled to hinge our conclusion on the question of limitation. We believe that the deeds of June 13, 1919, from John R. Greenhalgh and wife to Rufus C. Porter, and from Porter to John R. Greenhalgh, were valid instruments, supporting a gift of all interest of Mrs. Greenhalgh in the property conveyed to her husband; and, that the uncontradicted evidence supports the jury findings that such was the intention of Mrs. Greenhalgh. Manifestly, the deeds are without valuable consideration. The recitals of money paid are evidently merely formal and nominal; and, besides, according to the recitals, a like consideration was paid to each party so that the wife received no more than she paid. We think all the circumstances and conditions surrounding the execution of the deeds and that which has since transpired justify the jury's findings, and the jury was authorized to pass upon the issue of gift arising under such surrounding uncontroverted facts and circumstances. 26 C.J. 683.

In the case of A. W. Riley v. Lucinda E. Wilson et al., 86 Tex. 240, 24 S.W. 394, 396, our Supreme Court holds that a wife, through the intermediary of a third person, may make a valid gift to the husband of her separate property by joining with her husband in a deed to the third party who, in turn, deeds to her husband. "Upon this subject," the court said: "The doctrine is now firmly established in equity that she [the wife] may bestow her separate property, by appointment or otherwise, upon her husband, as well as upon a stranger." So, in the case at bar, we conclude that Mrs. Greenhalgh effectively passed her separate property through the intermediary of Mr. Porter to her husband, as a gift to him, and that the property inventoried by his executor was his separate estate, subject to the terms of his will.

■ This leads us to the consideration of appellee's assignments challenging the holding of the trial court, that the will of John R. Greenhalgh devised all personal property inventoried by the executor to Mrs. Laura M. Greenhalgh. We do not so construe the will. It is perfectly apparent, we think, that the testator intended to leave to his wife such "personal effects," giving to the term its meaning of articles pertaining to or associated with the person of the deceased, such as wearing apparel, luggage, jewelry, and the like, which he might possess at his death; and bequeathed to her the income from his entire estate, both real and personal, it to be administered by his executor for her benefit during her lifetime, and, upon her death, to be distributed to the various legatees named in the will.

It will be observed, in paragraph 1 of the will, that the testator bequeathed to his wife, Laura M. Greenhalgh, all his "personal effects"; then, in paragraph 2, he bequeathed to his wife, during her lifetime, all the income from his estate, and stipulated that, after her death, his executor may sell "all the property, both real and personal, which may belong to my estate at the death of the said Laura M. Greenhalgh, and distribute the proceeds among the several legatees named therein, as hereinafter described"; and further, in paragraph 21, he provides that: "All or any portion of my property might be sold and the proceeds reinvested in interest-bearing securities, and the revenue derived therefrom be paid to his wife during her life."

■ In construing wills, the universal rule of law is, that the intention of the testator governs, and this intention must be determined from the whole of the instrument, viewed in the light of surrounding circumstances existing at the time of the · execution of the will. Forsyth v. Dallas Joint Stock Land Bank of Dallas (Tex.Civ.App.) 81 S.W.2d 1103; Kennard et al v. Kennard et al. (Tex.Civ.App.) 84 S.W.2d 315. The will should be construed as to give effect to all its terms and to harmonize, if possible, apparently inconsistent or repugnant clauses or provisions to carry out the apparent will of the testator. So, in the instant case, at the time of the execution of the will in question, the testator had neither personal property · nor personal effects. All the

property John R. Greenhalgh owned and possessed was given to him by his wife. It was his, expressly given to dispose of at will and to whomsoever he pleased; she to do likewise with her property taken under the deeds of division between the parties.

We are aware that "effects" has oft-times the meaning to include all property, both real and personal; and "personal effects" to include property; but, ordinarily, the term "personal effects" refers to articles bearing intimate relation or association to the person of the testator. Especially is this true when the terms "personal effects" and "personal property" are used in the same written instrument, and carries with them repugnant and inconsistent devise. The terms "personal effects" and "personal property" must be given the meaning to carry out the will of the one employing them.

Bearing in mind that the will in question was drafted by an able and experienced lawyer, Mr. Porter, to whom it may reasonably be attributed knew the meaning of personal property as distinguished from real property, that, at the time the will was drafted, the testator was possessed of no personal property; the only effects he possessed was the real estate given to him by his wife. Mr. Greenhalgh sold one of the pieces of property before his death and reinvested $15,000 of the proceeds in interest-bearing securities. Then, after his death, the executor and Mrs. Greenhalgh, under the terms of the will, sold the other piece of property and the proceeds of sale were turned over to the executor. So, in the will, Mr. Greenhalgh authorized the sale of all his property, both real and personal, and therein directed that the proceeds of sale be reinvested, as he had previously done; and further, directed that only the income from his entire estate be paid to his wife and, at her death, be distributed among the other legatees.

It is true, at the time of his death, the testator had no prized articles of intimate relation, such as jewelry, luggage, clothing, etc., and there is no evidence that he had any of such effects at the time of making the will; but, obviously, the will was drawn to take care and make disposition of any and all of his estate, both real and personal, which he might possess at the effective date of his will. So, in keeping with that idea, he bequeathed to his wife, in paragraph 1, "all personal effects of every nature," and, in paragraph 2, he also bequeathed to his wife the income from his entire estate in the following language: "I give and bequeath to my wife, Laura M. Greenhalgh, all the income of every nature of my estate during the life of the said Laura M. Greenhalgh, and after her death my executor hereinafter named is hereby authorized and directed to sell within twelve months from her death all the property, both real and personal, which may belong to my estate at the death of the said Laura M. Greenhalgh, and distribute the proceeds thereof among the several legatees named herein as hereinafter named." Obviously, if we attach to the words "personal effects" in paragraph 1, its meaning of articles bearing intimate relation or association to the person, which, ordinarily, some of such prized articles are possessed in the lifetime of every man, the will becomes intelligible and consistent in all their parts; otherwise there exists apparent inconsistencies and repugnancies.

It is elementary that, in construing a will, all the four corners of the will must be looked to, that is, all parts construed together, so as to reconcile any inconsistencies or repugnancies, and where a term is employed having a meaning as to make the will harmonious, such shall be given to it, rather than a meaning to make the will ineffective. The question arises here, What did the testator mean when he gave to his wife "all his personal effects" and then in the immediate subsequent paragraph of his will, gave to his wife "all the income of every nature of my estate" during her life, and after her death directed that "all the property, both real and personal, which may belong to my estate" be distributed among the several legatees named therein? The action of the testator could mean nothing more, we think, than that he bequeathed to the wife all articles of personal property bearing intimate relation or association to his person which he denominated his "personal effects," and, for life, the income derived from his entire estate, "both real and personal." This construction evidently was given to the will by Mrs. Laura M. Greenhalgh, who was mostly concerned with her husband's devise, and by the executor who drafted the will. She accepted,

for five years of her life, the income from the entire estate; Mr. Porter handled the entire estate as belonging to him as such executor, and Mr. Niblo accepted the trust as administrator, and gave to the will a like construction. All parties elected to take under the will as here construed, until after the death of Mrs. Greenhalgh, when this suit was instituted.

We think the will in question can bear no other reasonable construction than that Mrs. Greenhalgh was bequeathed for life the income from all real and personal property of which her husband died seized and possessed, and, at her death, the property be distributed as therein directed. Hence, appellants' assignments on the action of the trial court in construing the will and directing the distribution of the property adversely to the holding herein are sustained.

In view of this litigation, appellants challenge the right of the plaintiff to take under the will of John R. Greenhalgh; he having forfeited his bequest by undertaking to contest the validity of the will and attempting to prevent the estate of the testator to pass to the legatees and devisees as therein provided. Hence, appellee, Mrs. Grace N. Niblo, as executrix and sole beneficiary of plaintiff's will, is not entitled to share in the estate here involved.

■ There can be no question, from the language used in the will here under consideration (paragraph 22), that the testator wished his estate to be distributed to the various legatees named by him and that he further desired to disinherit any legatee who might undertake to thwart his will. The will stands accredited as reflecting the testamentary desires of the deceased. Our courts have recognized the right of a testator to provide that any object of his bounty who is not satisfied to let the directions of his will be performed shall be disinherited. However, the great weight of authorities sustain the rule that a forfeiture of rights under the terms of a will will not be enforced where the contest of the will was made in good faith and upon probable cause. Calvery et al. v. Calvery et al., 122 Tex. 204, 55 S.W.2d 527, and authorities cited.

■ If Laura M. Greenhalgh owned all the property listed in the inventory of the estate of John R. Greenhalgh, title thereto would not pass under Mr. Greenhalgh's will to his legatees. Furthermore, if John R. Greenhalgh's will bequeathed all personal property to Laura M. Greenhalgh, then only the real estate passed to the remaining named legatees. In either event, William Noble Anderson, appellee's predecessor, would have inherited a greater portion of the estate, under the statutes of descent and distribution and by the terms of the will than was granted him by the will. We believe that plaintiff's suit in its last analysis was for the purpose of interpreting the will of John R. Greenhalgh and determining the extent of ownership of the property devised, rather than one to thwart the will of the testator.

In view of the strictness of the rule against declaring forfeitures, we do not think a suit brought in good faith and upon probable cause to ascertain the intention of the testator, the extent of his devise and, then, in turn, enforce its terms in accordance therewith, should be considered as an effort to vary the purpose and intention of the will. We overrule appellant's assignment.

We have carefully reviewed all other assignments and cross-assignments of errors presented by the respective parties not specifically above mentioned or discussed; they are overruled. The construction given the will of John R. Greenhalgh by the trial court is, in our opinion, incorrect, and, to that extent, the judgment of the court is reformed and will be modified so as to conform to the view here expressed. Accordingly, judgment is here reformed, decreeing that all the property, both real and personal, which was listed in the original inventory of John R. Greenhalgh and unto which the same has subsequently been converted into cash, now in the hands of Grady Niblo, as administrator de bonis non of said estate, be vested in and distributed to the beneficiaries named in the will, and all costs taxed against the plaintiff and his successor, Mrs. Grace N. Niblo, as executrix and sole beneficiary of his estate.

Judgment of the lower court is reformed, and, as reformed, affirmed.