## McJUNKIN v. REPUBLIC NAT. BANK OF DALLAS et al.

### No. 12747.

Court of Civil Appeals of Texas. Dallas.

July 15, 1939.

Rehearing Denied Oct. 14, 1939.

W. J. Rutledge, Jr., of Dallas, and Black, Graves & Stayton, of Austin, for appellant.

Bromberg, Leftwich, Carrington & Gowan and Hamilton, Harrell, Hamilton & Turner, all of Dallas, for appellees.

BOND, Chief Justice.

This suit was instituted by Republic National Bank of Dallas, successor to Republic National Bank and Trust Company, as Independent Executor and Trustee of the Will and Estate of Fred McJunkin, to construe the will of Fred McJunkin, deceased. The Bank made appellant, Mina G. McJunkin, wife of deceased, and all other beneficiaries named in the will, parties defendant. The controlling question in the case is, whether the will of Fred McJunkin discloses a purpose to dispose of the entire community estate of the testator and his wife, or only his interest therein.

The pertinent provisions of the will are as follows:

"I. I direct that all of my just debts, including the expense of my last illness and funeral, shall be paid out of my estate by my Executor hereinafter named.

"II. * * *

"III. All articles of household furniture and furnishings, books, pictures, silverware, my automobile, all of my clothing and jewelry, and all similar articles of household use and wearing apparel which I may own or possess at the time of my death, together with our homestead (if I own a home at the time of my death), I give, bequeath, and devise in fee simple absolute unto my wife, Mina G. McJunkin.

"IV. All the rest, residue, and remainder of the property which I may own at the time of my death, both real and personal, and of every kind and description, wherever the same may be situated, I give, bequeath, and devise unto the Republic National Bank & Trust Company, a national banking corporation, of the City of Dallas, Texas, its successor or successors, or assigns, to have to hold the same In Trust upon the terms and conditions, for the uses and purposes, and with the powers and duties following, that is to say: The Trustee shall receive, hold, and manage the property constituting the trust estate, and shall keep the same at all times invested in such stocks, both common and preferred, notes, bonds, and other property, real or personal, as the Trustee may deem safe and desirable, including such owned by Trustee or the affiliated or subsidiary companies of Republic National Bank & Trust Company, and shall make reinvestments and changes of investments thereof from time to time, and shall collect the income therefrom, with full power in the Trustee to sell, exchange, assign, transfer, lease (for terms extending beyond the termination of the trust, or otherwise), pledge, mortgage, or otherwise dispose of all or any portion of the trust estate in such manner and upon such terms as the Trustee may deem most beneficial to the trust estate, including the right in the Trustee to give options for the sale of any property belonging to the trust estate, it being my desire that the selection of the character of securities for the investment of the trust funds is to be in the absolute discretion of the said Trustee; the Trustee shall have full power to determine whether any money or other property coming into its hands, concerning which there may be any doubt, including any profit or loss, shall be considered as a part of the principal or income of the trust estate, and to apportion between such principal and income of the trust estate any loss or expenditure in connection with said trust estate as to it may seem just and equitable; the Trustee shall have further power to continue to hold any stocks, securities, or other property which it may receive hereunder, so long as it may consider the same desirable investments, regardless of whether such stocks, securities, or other property are in law proper investments for trust funds; and the Trustee may invest any part of the trust funds in property located outside of the State of Texas, or in the obligations of nonresidents of the said State; and every action taken by the Trustee pursuant to the foregoing powers, or any decision made by the Trustee in the exercise of the discretion herein given to it, shall be conclusive and binding upon all persons concerned therein.

"V. I desire and direct that a trust fund be set aside by my Trustee for the sum of Two Hundred Thousand Dollars ($200,000.00), which fund shall be out of the first proceeds of my estate after the payment of my debts, and if my estate should *ve* valued at less than Two Hundred Thousand Dollars ($200,000.00) at the time of my death, then the whole of my estate shall be set aside in said trust fund, which shall be for the use and benefit of my beloved wife, Mina G. McJunkin, and my children, to be administered as follows: (a) The income from same shall be paid to my wife, Mina G. McJunkin, in monthly installments until her death or remarriage. (b) Upon the death or remarriage of my wife, Mina G. McJunkin, my Trus-

tee shall use the income, or so much thereof as may be necessary, for the support, education, and maintenance of any child or children of our marriage, and the principal shall be distributed to such child or children in equal portions per capita as each child become thirty (30) years of age. The portion of this estate distributable to such child or children shall descend to his or their issue per stirpes in the event of the parent's death. If child or children of our marriage should survive my wife and all should die before the terms of this trust have been fulfilled, leaving no heirs of my body to receive the trust, then in such event it is my wish and direction that the trust shall terminate and the estate be distributed among my surviving sisters or their heirs, the sisters taking per capita and their children per stirpes.

"VI. I do make the following special bequests out of the residue of my estate after the trust fund mentioned in the preceding paragraph has been set aside. (a) To Mrs. Florence Norwood, of Houston, Texas, the sum of Five Thousand Dollars ($5,-000.00); (b) To Mrs. A. M. Campbell, of Houston, Texas, the sum of One Thousand Dollars ($1,000.00); (c) To Mrs. George T. Moss, of Houston, Texas, the sum of One Thousand Dollars ($1,000.00); (d) To Mrs. Sam Garvin, of Navasota, Texas, the sum of One Thousand Dollars ($1,000.00).

"In the event of the demise of any one or more of the legatees mentioned in the foregoing subdivisions (a) to (d), both inclusive, of this paragraph, prior to the distribution of said bequests to them, such bequest to the one deceased shall lapse and it shall become a part of the residuum of my estate, to be distributed as hereinafter provided. (e) To P. C. McIntyre, my Uncle, of Houston, Texas, the sum of One Thousand Dollars ($1,000.00), and in the event of his death prior to my own demise, I direct that said bequest of One Thousand Dollars ($1,000.00) be paid to his wife, Mattie McIntyre. If both of them should die prior to my own death, this bequest of One Thousand Dollars ($1,000.00) shall lapse and become a part of the residuum of my estate, to be distributed as hereinafter provided. (f) I do hereby direct my Trustee to set aside the sum of Ten Thousand Dollars ($10,000.00), to be held in trust for the benefit of my sister, Mrs. Rebekah McJunkin Estill, of Dallas, Texas; and my Trustee shall pay the net

income accruing thereunder in quarterly installments to my sister, Mrs. Rebekah McJunkin Estill, during her lifetime, and, upon her death, shall distribute the principal of this trust estate to her children, if any survive her; in the event she should die without issue, then the principal of this trust estate shall pass to her surviving sister, or sisters, in equal shares. (g) I further direct that my Trustee set aside the sum of Ten Thousand Dollars ($10,000.00), in trust, for the benefit of my sister, Mrs. Waldeen McJunkin Voorhis, of Dallas, Texas, and direct that my Trustee shall pay the net income accruing thereunder in quarterly installments to said Mrs. Waldeen McJunkin Voorhis during her lifetime and, upon her death, distribute the principal of this trust estate of her children, if any, surviving her; in the event no children survive her, then the principal of this trust estate shall pass to her surviving sister, or sisters, in equal shares. (h) I further direct that my trustee set aside the sum of Ten Thousand Dollars ($10,-000.00), to be held in trust for the benefit of my sister, Jessie Wilson McJunkin, of Dallas, Texas, and direct that the net income accruing thereunder shall be paid in quarterly installments to said Jessie Wilson McJunkin during her lifetime, and upon her death, the principal of this trust estate shall be distributed to her children, if any surviving her; in the event she should die without issue, then the principal of this trust estate shall pass to her surviving sister or sisters in equal shares. (i) I further direct that my Trustee shall set aside the sum of Five Thousand Dollars ($5,000.00), in trust, for the benefit of my niece, Fred Waldeen Voorhis, of Dallas, Texas, and direct that my Trustee shall pay the net income accruing thereunder in quarterly installments to said Fred Waldeen Voorhis during her lifetime and, upon her death, shall distribute the principal of this trust estate to her children, if any, surviving her; in the event she should die without issue, then the principal of this trust estate shall be distributed equally among my surviving sisters. (j) I bequeath the sum of One Thousand Dollars ($1,000.00) in cash to my nephew, Elmer J. Voorhis, Jr., of Dallas, Texas, to be paid to him, or to his parents for his use if he is not of age, in four (4) equal annual installments of Two Hundred Fifty Dollars ($250.00) each. (k) I bequeath the sum of One Thousand Dollars ($1,000.00) in cash to my niece, Harriet

Voorhis, to be paid to her in four (4) equal annual installments of Two Hundred Fifty Dollars ($250.00) each, and if she is not of age at the time of my death, then said payments shall be made to her parents.

"VII. After the payment of the foregoing bequests, if there should be any property left in my estate, then I direct that it be added to the trust fund for the benefit of my wife and children and shall be administered and distributed as provided in Paragraph V of this will. In other words, after the trust funds and bequests provided for in Paragraph V and VI hereof have been satisfied and complied with, then any residue or remainder of my estate shall be used for the benefit of my wife and children in addition to the fund as provided for in Paragraph V.

"VIII. If at any time during the lifetime of my wife or children, and during the time this trust continues, either of them should be in need of funds in excess of the payments from the trust estate hereinbefore authorized to be made to them, in order to provide for their reasonable care and comfort, or because of illness, infirmity, or other emergency affecting either of them, then I authorize the Trustee in its sole discretion to encroach on the principal of the trust estate from time to time for such purposes and in such amounts as it may deem necessary and proper.

"IX. Neither the principal nor the income of any trust estate in this will created shall be liable for the debts of any beneficiary thereof, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity, and no beneficiary shall have any power to sell, assign, transfer, encumber, or in any other manner to anticipate or dispose of his or her interest in the trust estate or the income produced thereby.

"X. The provisions in this will made for my said wife are in lieu of homestead, allowance for support, rights of election, statutory allowances in lieu of provisions, and all other statutory or common law marital rights which she may have in and to my estate and our community estate, and the same shall be free from the interest or control of any other husband she may hereafter have; and in the event my said wife should renounce this will and elect not to take hereunder, then from and after such election all rights of my said wife in and to the trust estate created by this

will shall at once cease, and the Trustee shall thereafter hold, manage, and distribute the trust estate, both as to income and principal, in all respects as is in this will provided in the case of the death of my said wife."

In construing wills, the primary object is to ascertain the testator's intent and give it effect where legally possible. Every part, sentence, clause, or word of the will must be considered, and the language employed construed in the light of surrounding circumstances and facts in existence at the time of making the will. The intent of the testator is paramount; mere technical and grammatical rules of construction should not supplant the clear intent of the maker. A will should be construed that, the testator only intended to dispose of property owned by him, unless the language employed is fairly susceptible of other construction. " * * * for a will to be given the effect of an attempted disposition of property not owned by the testator, it is required that the language of the will conclusively evidence such a purpose." Avery v. Johnson, 108 Tex. 294, 192 S.W. 542, 544.

Fred McJunkin died on July 7, 1931, at approximately fifty years of age. He and appellant, Mina G. McJunkin, were married on December 23, 1925, and to the marital union one child, Fred McJunkin, Jr., was born, who, at the death of his father, was three or four years of age. McJunkin was born into a family of only ordinary means and acquired no property by gift, devise or inheritance. He was a shrewd, capable business man, frugal in his habits, and wise in his investments and financial operations. At the time of his marriage, his estate consisted of some real estate, but principally of notes, bonds, stocks and other securities, valued by him at $243,210.84; and, at the time of his death, his estate was valued at $339,105.42, of which only $76,000 was traceable under rules of law to his separate estate, owned by him prior to marriage. McJunkin's will was dated November 5, 1929, approximately four years after his marriage, and one and a half years before his death, and, at that time, his estate, separate and all of the community property, was of the approximate value of $313,000.00. There is no proof in the record that Mrs. McJunkin brought any funds or property into the marital relations, or that she had any separate property whatsoever. The proof

shows that after their marriage, McJunkin's principal activity was the operation of the Southland Hotel, in Dallas, as partner with another for the first two years, and, thereafter, on a salary of $10,000 per year. The homestead of himself and wife, at the time of the making of the will and at his death, was acquired subsequent to their marriage—community property—and valued on the date of his death at approximately $12,500. The household furnishings, books, pictures, silverware, automobile, and other like personal effects, also were community properties, valued at approximately $1,500.

It will be observed that the will creates a $200,000 trust estate in favor of his wife and son, and makes bequests of $46,000 to other surviving members of his family. The record shows that at no time, from the making of the will to the time of his death, did Fred McJunkin have property of his own, independent of his wife's community, to establish the wife's and son's devised trust estate and pay the various bequests to his sisters, aunts, nieces and nephews. On the other hand, taking the value of his separate estate and of the entire community of himself and wife, either as approximately $313,000 at the time he wrote the will, or as approximately $339,105.42 at the time of his death, it is conceivable that McJunkin intended that his wife's community property should go into the trust estate, and pay the various gifts to his relations,—without which entire community, the beneficent bequests could not have been consummated.

■ It is a well settled rule of construction that the facts and circumstances surrounding the testator at the time of making the will may be viewed, and from such viewpoint, that construction which most clearly comports with the manifest object or intention of the testator, given to the language he employed. " * * * the universal rule of law is, that the intention of the testator governs, and this intention must be determined from the whole of the instrument, viewed in the light of surrounding circumstances existing at the time of the execution of the will." First Methodist Episcopal Church South et al. v. Anderson, Tex.Civ.App., 110 S.W.2d 1177, 1182, writ of error refused. See, also, Forsyth v. Dallas Joint Stock Land Bank of Dallas, Tex.Civ.App., 81 S.W.2d 1103; Kennard v. Kennard, Tex.Civ.App., 84 S.W.2d 315. So, we think, the power to

sell, exchange, and dispose of community property, without the joinder of the wife, and all the related facts and circumstances in existence at the time of making his will, are consistent with the employment by Fred McJunkin of language in the will, designating all property possessed, managed and controlled by him, both separate and community, as "my estate", or "the property which I may own at the time of my death". These are the natural expressions of the husband in dealing with community property. The right of the wife to one-half of the property acquired during marriage is equivalent to the right of the husband to the other half. However, during the life of the husband, her right is passive; his is active, and Texas Jurisprudence gives him the absolute control and disposition of the property. The husband has, and usually does exercise dominion over the entire property.

■■ However, without looking to the surrounding circumstances and facts existing at the time of the making of the will, we think the language employed clearly shows that Fred McJunkin was dealing with the entire community estate of himself and his wife, Mina G. McJunkin, and that it was his intention to require his wife to elect whether she would permit her half of the community to pass into the trust estate and take the benefits given her under the will, or whether she would reject the benefits and claim her full, free, and unlimited half of the community estate. A reading of the will clearly demonstrates that, throughout the will, save and except in Clause 10, which shall be hereafter considered, the testator used the terms "my property" and "our property", "our homestead, if I own a home", in effect that, "property of which I may die seized and possessed", "my children" and "children of our marriage", referring to things and property held in common, community and separate property, using the terms "my" and "our" generally and interchangeably, and covering the whole of the thing referred to, as is usual and customary in the male of the species, the head of the family, in such situations.

In Clause 1, he directs that all "my debts" be paid. In a legal sense, all community debts are debts of the husband and wife. It could hardly be said that the term "my debts" simply refers to one-half of the community debts—strictly his debt. In Clause 3, he gives all the personal effects

pertaining to the home to his wife, including articles of household furniture and furnishings, books, pictures, silverware, clothing, jewelry, and the automobile, all of which is community property. The language employed in this clause of the will does not convey the idea that he was attempting to deal with it as separate property, or one-half of the community. He designates the automobile as "my automobile", but no other article is thus designated. He also refers to "our homestead (if I own a home at the time of my death)", using the term "If I own a home" in immediate juxtaposition with the words "our homestead". Clearly, he deals here with the homestead, household and personal effects as a whole, devising to the wife all title thereto, to the exclusion of his son. In Clause 5, the testator provides a trust estate and designates its use and benefit for "my wife and *my* children", and in the same clause, refers to any "child or children of *our* marriage".

In giving effect to the terms used generally and interchangeably in the will, viewed in the light of the whole will, we think appellant magnifies beyond their importance, the terms *"my* estate", "property which *I* may own at the time of my death", and "of which *I* may die seized and possessed" (used in the granting clauses of the will), as only deals with just his separate property and his half of the community. We think rather, viewed in the light of the entire will, the broad and liberal interpretation of the terms was employed by the testator, as descriptive of the whole of the things mentioned, to wit, as either the separate or community property; the homestead, as *"our* homestead", or the "home that *I* own at the time of my death", and "my children", as "our children." This conclusion is forcibly demonstrated as we come to consider the language used in Clause 10.

In Clause 10, the testator very clearly says exactly what he has been dealing with in other portions of the will, makes clear the terms employed in his will, and, in accordance therewith, expressly puts his wife to an election. This clause provides—we repeat: "The provisions in this will made for my said wife are in lieu of homestead, allowance for support, rights of election, statutory allowances in lieu of provisions, and all other statutory or common law marital rights. which she may have in and to my estate and our community estate, and the same shall be free from the interest or control of any other husband she may hereafter have; and in the event my said wife should renounce this will and elect not to take hereunder, then from and after such election all rights of my said wife in and to the trust estate created by this will shall at once cease, * * *".

Evidently the testator knew that his wife had a right in the property, which he recognized and, by the will, was attempting to divest from her and place in trust for her use and benefit. He also recognized his limitations in dealing with the community property, by putting his wife to an election, either to accept and consent to such disposition, or to deny the will, refuse the benefits provided for her, and take only her one-half of the community. "The provisions of this will made for my said wife", said the testator, "are in lieu of * * all * * * marital rights which she may have in and to *my* estate and *our* community estate". There is no doubt, we think, that Fred McJunkin was conscious of the fact that he was dealing with the entire community estate, and, to clarify the situation, expressly gave his own interpretation of the provisions of the will as depriving his wife of the right of her community interest and marital rights in the community property. Thus putting her to an. election, . clearly implying that he, by the terms of the will, intended to and actually did divest her of an estate in which she had a community interest; and, in lieu thereof, created a beneficent trust in her favor—therefore saying "In the event my wife should renounce this will and elect not to take hereunder, then from and after such election all rights of my said wife in and to the trust estate created by this will shall at once cease." The homestead, in fee simple, household furnishings, and the personal effects of the home, the automobile, and the benefits of the trust estate were given to the wife *in lieu of* all her marital rights, necessarily included her interest in the community property. In effect, McJunkin said: "In disposing of that community estate of ours and in providing for you by that disposition, the provisions of .my will which do that,. are in lieu of your interest in our community estate." We think there can be no other construction.

Mrs. McJunkin recognized the meaning of the will, as affecting her rights. She solemnly filed in the Probate Court of Dallas County, where the will was admitted to probate, the declaration that she "here

and now in open court elects, and files this her election, to take under the terms and provisions of the will of Fred McJunkin of date November 5, 1929, and this date admitted to probate by this court"; and, in accordance therewith, received the benefits of the trust estate thus created, from the date of the probate of the will in 1931, until the filing of her claim repudiating such election. Appellant concedes that she elected to take under the will and has exercised her rights in the trust.

Therefore, in the light of the record, when the whole of Fred McJunkin's will, from its four corners, is read, considered and construed, giving the language used its plain, fair and normal meaning, the benefits given the wife in lieu of her community interest, and her election in accepting the benefits, we conclude that the will passed the entire community property into the trust estate; accordingly, the judgment of the court below should be affirmed, and it is so ordered.