**HAMMER et ux. v. PLUMHOFF et ux.**

No. 1982.

Court of Civil Appeals of Texas. Waco.

Feb. 17, 1938.

Mark Smith, of Waxahachie, for appellants.

J. C. Lumpkins, of Waxahachie, for appellees.

GALLAGHER, Chief Justice.

Appellees, Mrs. Mamie Plumhoff, joined by her husband, Ed Plumhoff, sued appellants, R. J. Hammer and wife, Bessie Hammer, to recover on a promissory note executed to Mrs. Plumhoff by them December 1, 1926, due five years after date, for the sum of $1,000, and to foreclose a vendor's lien retained in a deed from appellees and George O. Walker and wife to said Mrs. Bessie Hammer conveying to her as her separate estate 70 acres of land in Wise county. Said conveyance and the note given in consideration thereof arose out of the voluntary settlement and partition of the estate of C. B. Walker, deceased. Said Walker died in March, 1926. He left a will, which was promptly probated. Judge J. T. Spencer, at the time a practicing attorney at the Waxahachie bar, was named as executor and authorized to sell any or all the estate to pay debts. The testator

devised to his son, George O. Walker, and his daughter, Bessie Hammer, each an undivided one-third interest in his real estate in fee simple. He also devised and bequeathed to his daughter, Mamie Plumhoff, an undivided one-third interest in his real estate, and, in addition thereto, all personal property of every kind and character and wherever situated of which he might die seized and possessed, in fee simple. Said devise and bequest were followed immediately in the same paragraph by this language: "I make this additional gift to my daughter, Mamie Plumhoff, because it is my intention to reside with her and 'I feel that the personal property which I herein bequeath to her will, in a measure, recompense her for the trouble of looking after and taking care of me in my declining years." Apparently there was little, if any, material change in the testator's property between the execution of the will and his death. While the executor did not file and have recorded an inventory and appraisement of the estate, the testimony shows that it consisted of 491 acres of land, an automobile, a binder, two horses, a cow and calf, and some small items of household furniture. There was also about $425 in cash on hand, and an insurance policy on his life, payable to his estate, in the sum of $1,480, was collected. The debts of the testator, including burial expenses, amounted in the aggregate to approximately $7,300. Of this amount, $4,280 constituted a lien on the real estate, or a part thereof, $1,000 was owed to his brother, George, and $700 to Mrs. Plumhoff. These debts were all unsecured. Various small debts and expenses of last sickness and burial amounted to approximately $1,320. These debts were paid by Mrs. Plumhoff out of her individual funds. The $700 debt due to her was paid by a deed from her brother and sister to an 11-acre pecan orchard, a part of the 491 acres of land owned by the testator as aforesaid. The debt due testator's brother was paid by Mrs. Hammer and her brother George in equal parts. According to the testimony, the value of the automobile was $400, the binder $35, the horses $100 each, and the cow and calf $45. No value was assigned to the few small articles of household furniture. One of the horses was in the possession of George Walker, and he kept the same. The other horse died, but the testimony does not disclose when. Mrs. Plumhoff kept the auto, the binder, the cow and calf, and the horse that died. So far as shown by the testimony, she did not account for the value of the same in the settlement and partition of the estate.

The real estate aforesaid consisted of two tracts of land in Ellis county and one tract in Wise county. One of the Ellis county tracts contained 140 acres and was appraised at $110 per acre, and the other contained 100 acres and was appraised at $125 per acre. The Wise county tract contained 240 acres and was appraised at $100 per acre. The lien indebtedness in the sum of $4,280 as aforesaid became due on December 1, 1926, the date of the voluntary settlement and distribution of the estate. The notes evidencing said indebtedness and the lien securing the same were transferred by the holder to Mrs. Plumhoff in consideration of the payment by the executor of $4,280 in cash. The deposit out of which said sum was paid consisted of the balance in the bank to the credit of the testator at the time of his death in the sum of $425, rents on the real estate for the current year in the sum of $1,199.20, the proceeds of the life insurance policy payable to the estate in the sum of $1,480, and $1,175 in cash loaned by Mrs. Plumhoff out of her personal estate to enable the executor to discharge said indebtedness. The notes and lien were, at the request of the executor, transferred to Mrs. Plumhoff as aforesaid. The voluntary settlement and partition of the estate occurred at the same time. Mrs. Plumhoff received the 140-acre tract situated in Ellis county and appraised at $110 per acre, as before stated. Mrs. Hammer received the 100-acre tract in Ellis county appraised at $125 per acre, and 70 acres in Wise county, which is the tract involved in this suit, and which was appraised at $100 an acre. George Walker received the remaining 170 acres in Wise county, a part of the tract appraised at $100 per acre as aforesaid. The testimony shows that there was some dissatisfaction over the appraisement, but what concessions, if any, were made in the resulting settlement is not disclosed. George Walker, as a part of the transaction, executed a note to Mrs. Plumhoff for $1,000, which was secured by a lien on the land conveyed to him. Mrs. Hammer executed to Mrs. Plumhoff the note sued on herein and accepted deeds from her brother and sister to the two tracts of land aforesaid. The deed to the tract in controversy in this suit retained an express lien to secure said note. She paid interest thereon for five years. She paid no interest for the next three years, but paid $70 interest on November 1, 1934. This suit was filed November

30, 1935, one day before said note would have been barred by limitation.

Appellants' defense was that there was sufficient personal property belonging to the estate of the testator to have satisfied the entire indebtedness thereof; that the executor should have sold the same and discharged said indebtedness with the proceeds; that he fraudulently told Mrs. Hammer that the personal property belonged to Mrs. Plumhoff; that she accepted such statement as true; that she had to sign said note to secure her share of the estate; and that she did not and never did rightfully owe the same. Appellants made George Walker a party to the suit, but did not allege any cause of action or seek any relief against him. He filed no pleading and did not participate in the controversy, except to testify as a witness when called to do so by appellees.

■ The case was tried to a jury. Mrs. Hammer, in the most general terms, testified that the executor told her that the personal property belonged, under the will, to Mrs. Plumhoff. She testified that the executor was representing her as much as he was representing Mrs. Plumhoff, and she did not deny the testimony of other witnesses that the executor also said that they, the three devisees, were all of age and could settle the estate as they might agree to do. Unfortunately, the executor was not physically able to testify nor attend the trial, and he has since died. The facts hereinbefore recited were shown by affirmative testimony and were in no way controverted or disputed by appellants. Much of said testimony was corroborated by documentary evidence. The court instructed a verdict for the plaintiff for the balance due on the note and for a foreclosure of vendor's lien to secure the same. Appellants contend the court erred in giving such peremptory instruction. We have examined the evidence as a whole with patient care, and have reached the conclusion that it was wholly insufficient to justify a judgment in favor of appellants on the ground that Mrs. Hammer did not rightfully owe said note, and that she was induced to sign the same by either fraud or duress.

■ We have shown that Mrs. Plumhoff permitted the life insurance payable to the estate to be applied to the discharge of the indebtedness, and that, in addition thereto, she applied $2,495 of her separate funds to that purpose. Though she did keep a few hundred dollars worth of personal property without showing affirmatively that the same was taken into consideration in the agreed settlement of the estate, the will gave her all the personal property. While it is the general rule that personal property will be first applied to the satisfaction of debts, when such property is the subject of a specific bequest and the language used in making the same indicates a purpose on the part of the testator that the legatee shall have and enjoy the same free from the burden of debts, such purpose will ordinarily be recognized and effectuated and the payment of debts imposed first upon other property. Kennard v. Kennard, Tex.Civ.App., 84 S.W. 2d 315, 321, pars. 8 and 9, and authorities there cited. The testator, at the time he executed the will and at his death, owed debts far in excess of the amount of personal property shown to have been owned by him. As before recited, he stated, in making the bequest of the same to Mrs. Plumhoff, that he did so because he expected to make his home with her in the future. We think it reasonably clear that he did not anticipate nor intend that such property would be subjected to and consumed by the payment of his general debts and his expressed purpose thus thwarted. Any other construction would make his declared purpose to recognize her anticipated care and attention and to recompense her therefor a mere pretense.

The judgment of the trial court is affirmed.