KENNARD et al. v. KENNARD et al.
No. 1577.

Court of Civil Appeals of Texas. Waco.
April 18, 1935.

Rehearing Denied June 27, 1935.

Mitchell Davis, of Cleburne, T. P. Buffington, of Navasota, and Baylor B. Brown, of Fort Worth, for appellants.

R. A. Kilpatrick and Walker, Baker & Walker, all of Cleburne, and Geo. A. Titterington, of Dallas, for appellees.

ALEXANDER, Justice.

The facts in this case are too complicated and the parties and issues too numerous to permit of a statement, within the space usually allotted for that purpose, that would be sufficient to clearly present the case to one not otherwise familiar with the record. We have concluded to make only a brief general statement and then separately discuss the pertinent facts as the issues are disposed of.

G. B. Kennard brought this suit against M. E. Kennard and S. A. Kennard and others to recover on twelve promissory notes aggregating approximately $14,000. It was alleged that M. E. Kennard and S. A. Kennard had theretofore engaged as partners in the business of raising live stock under the firm name of "Kennard Ranch," and that five of the notes sued on were obligations of said partnership, and the other notes represented individual obligations of M. E. Kennard. The plaintiff alleged that the defendants, M. E. Kennard and S. A. Kennard, in order to better secure the payment of said notes, had executed and delivered a deed of trust on their shares of the estate devised to them under the will of their deceased father, M. L. Kennard. The plaintiff made the independent executors of the estate of M. L. Kennard, deceased, parties to the suit, alleged that the estate had been fully administered,

and was ready to be closed, and prayed for a foreclosure of the deed of trust lien on M. E. Kennard's and S. A. Kennard's interest in the estate. The executors of said estate entered their appearance, admitted that said estate had been fully administered except for the payment of certain debts, and prayed that the court take charge of the estate, .adjust the equities of the various parties, and wind up the affairs of said estate. Various other creditors and claimants, as well as the other devisees and legatees named in the will of M. L. Kennard, deceased, were made parties to the suit. The case was tried in the lower court without a jury. The plaintiff recovered judgment on the notes sued on and succeeded in foreclosing his lien on a portion of the property devised to M. E. and S. A. Kennard, but failed to obtain the complete relief prayed for, and hence has appealed. Various defendants and intervenors were likewise dissatisfied with the judgment of the trial court, and have appealed.

M. L. Kennard died January 18, 1928, leaving a written will which has been duly probated. By the first paragraph of the will M. E. Kennard, Mrs. Tom Kennard, and B. J. Copeland were named as independent executors without bond. Paragraphs 2 to 5, inclusive, of said will were as follows:

"Second. I direct that all my just debts be paid, including any inheritance taxes which may be assessed against my estate, and either of my children, and two mortgages for $10,000.00 each against the ranch property hereafter devised. If the debts against the ranch property exceed $20,000.-00, whether secured or unsecured, such excess shall be charged against and paid out of the property herein devised to M. E. Kennard and S. A. Kennard. In the event, however, my estate shall pay any other note or debts for M. E. and S. A. Kennard, then the amounts so paid shall be charged against and repaid out of the share of the one for whom the same shall be paid, of the property devised in the fifth paragraph of this will. In the event my estate shall pay any note or other debt for R. McDonald, the amount so paid for him shall be charged against and repaid out of the property devised to Mrs. Sadie McDonald, by the fifth paragraph of this will.

"Third. I hereby give, devise and bequeath to Mrs. L. E. Aker, my daughter, and Ranald R. Kennard, my son, share and share alike for and during the terms of

their natural lives, the tract of the Sam Marshall survey, containing about 135 acres, lying west of my home place and known as the Holmes and Wright farm, and being all the land I own in the Marshall Survey, and also the tract I own in the Isaac Batterson Survey of about 55 acres, with remainder to their natural children. In the event, however, either Mrs. L. E. Aker or Ranald R. Kennard shall die without issue, then the survivor of them shall have and I hereby devise all of said property to such survivor in fee simple.

"Fourth. I hereby give, devise and bequeath unto Mrs. Tom Kennard, trustee for Virginia Kennard, and to Ranald R. Kennard, share and share alike, all of the mules, cattle, farming implements, machinery, and other personal property situated on my home place, and the trustee and her successor shall have the powers concerning the same as hereafter set out in paragraph sixth of this will.

"Fifth. I hereby give, devise and bequeath, absolutely and in fee simple, in equal shares, to M. E. Kennard, Mrs. L. E. Aker, Mrs. Sadie McDonald, S. A. Kennard, R. R. Kennard and Mrs. Tom Kennard, trustee for Virginia Kennard, my children, the following described real and personal property:

"(1) All of the personal property of every character which I own or may be entitled to at my death, including all money, bank deposits, stock in banks and other corporations, notes, cattle, sheep, mules, horses, farming implements and other personal property of every kind and character, regardless of location, save and except therefrom, however, all of the personal property devised to the trustee of Virginia Kennard and Ranald R. Kennard in paragraph four of this will.

"(2) All of the land situated in Johnson County, Texas, known as the Kennard Ranch, consisting of about 3731 acres of land of the following surveys: 262 acres of the A. Pitcher survey; 88 acres of the J. Bishop survey; 57 acres of the M. Hardy survey; 260 acres of the A. D. Kennard survey; 123 acres of the R. M. Bankhead survey; 126 acres of the W. R. Baker survey; 320 acres of the J. C. Clark survey; 170 acres of the I. Van Hooser survey; 640 acres of the H. & T. C. Ry. Co. survey; 80 acres of the D. Hornbuckle survey; 520 acres of the C. Lynberg survey; 26 acres of the A. M. Nelson survey; 250 acres of the A. Pratt survey; 150 acres of the J.

West survey; 563 acres of the J. R. Worrell survey and 111 acres of the I. & G. N. Ry. Co. survey.

"The acreage herein stated is possibly not entirely accurate, but it is my intention and I hereby devise to my six children aforesaid all of the lands known as the Kennard Ranch, situated in Johnson County, Texas, and west of the city of Cleburne. M. E. Kennard and Virginia Kennard already own an undivided one-fourth interest each in and to the 88 acres of the J. Bishop survey, 170 acres of the R. Van Hooser survey, 126 acres of the W. R. Baker survey, and 320 acres of the J. C. Clark survey; and S. A. Kennard and M. E. Kennard own together an undivided interest of 320 acres in the 640 acres of the H. & T. C. Ry. Co. survey No. 11; and it is not my intention to interfere with their ownership thereof, or to devise the same herein, but it is my intention and I hereby will and devise to my six children each a one-sixth interest in the land which I own in said ranch."

By the sixth paragraph of the will the testator appointed Mrs. Tom Kennard trustee for Virginia Kennard, who was subnormal in mentality, and concluded with the following statement: "The trustee shall use such portion of the revenues and principal of the property of Virginia Kennard for her support and maintenance as she may deem wise and proper, it being my desire that Virginia shall have the same comforts and luxuries as heretofore, and that she shall live and be maintained in accordance with her station in life and property holdings."

■ The first question to be determined involves a construction of the second paragraph of the will of M. L. Kennard, deceased. The issue arose in this manner: The said M. L. Kennard during his lifetime owned a large ranch in Johnson county, Tex. For several years prior to his death he allowed two of his sons, M. E. Kennard and S. A. Kennard, to have the free use of said ranch and the animals thereon for the purpose of raising live stock. Said two sons were so engaged as partners under the firm name of "Kennard Ranch." M. L. Kennard had no interest in said business, nor the profits to be derived therefrom, and was not responsible for its obligations. During the years 1921 and 1922 said firm became financially involved and was unable to pay its obligations. M. L. Kennard voluntarily gave two notes to loan companies

for the sum of $10,000 each, and secured same by two separate mortgages on the ranch land and used the money so borrowed thereon to pay the debts of said firm composed of M. E. and S. A. Kennard, and known as "Kennard Ranch." Thereafter said firm became indebted to other creditors whom they were unable to pay. Some of the notes herein sued on by plaintiff represent obligations so incurred. In addition to these obligations said firm became indebted to A. A. Powell in large sums, for which said Powell held the notes of the firm. Powell is dead, and his executor, Murphy Pickle, was made a party to this suit under the allegation that he was claiming some interest in the estate sought to be foreclosed on. Powell's executor answered setting out the notes executed by said partnership to Powell and asserted that the debts represented thereby were "debts against the ranch property" within the meaning of the second paragraph of the will of M. L. Kennard, deceased, and therefore should be "charged against and paid out of the property" devised to M. E. and S. A. Kennard under said will. The trial court accepted this view of the matter. The court found that two of the notes sued on by plaintiff and the two notes held by Powell's estate were obligations of said firm growing out of the operation of the live stock business as conducted on said ranch, and were therefore "debts against the ranch property" within the meaning of said will, and as a consequence ordered the executors of M. L. Kennard's estate to pay same out of the portion of the estate devised to M. E. and S. A. Kennard before delivering any of said estate to said two devisees or their assignees. The plaintiff and several other parties to the suit complain of this rule.

Powell's executor does not contend that the debts evidenced by the notes executed by the partnership composed of M. E. and S. A. Kennard and payable to Powell were debts owing by M. L. Kennard or his estate, but it is his contention, in effect, that the testator by the language used in paragraph II of the will evidenced an intention to assume the debts of said firm and to make the holders thereof legatees and beneficiaries under his will to the extent of the amount of the debts held by each of them. Unless Powell's executor can maintain his alleged right to be so treated as a beneficiary under M. L. Kennard's will, he cannot now recover against said estate, for he failed to present any claim against said estate within the required time, and is now barred by limitation from doing so. We do not think that the language used in the will is susceptible of the construction contended for. The entire controversy hinges on the construction to be placed on the words "debts against the ranch property," as used in the second sentence of paragraph II of the will, wherein the testator said: "If the debts against the ranch property exceed $20,000.00, whether secured or unsecured, such excess shall be charged against and paid out of the property herein devised to M. E. and S. A. Kennard." The testator in the first sentence of the same paragraph had directed that "all my just debts be paid." "The debts," as used in the second sentence, doubtless referred to the same character of debts that had been referred to in the previous sentence, that is, the obligations of the testator and for which said estate was legally liable. It would be a rather strained construction to hold that the testator, by the use of such language, intended to assume, without limit, the obligations of an unnamed debtor and to make the holders of such obligations, without naming them, legatees under his will. In our opinion much clearer language than this would be necessary in order to justify this construction. It is far more reasonable to assume that the testator believed that since said two sons had enjoyed the free use of the ranch and the testator's live stock thereon for so many years, which use continued up to the time of the testator's death, they should be responsible for all indebtedness incurred by the testator in connection with the ranch; or that he anticipated that creditors who had made advancements to said two sons in order to enable them to carry on the live stock business on the ranch owned by the testator might contend that the testator had an interest in the business, or had benefited by the advancements, and that as a consequence his estate was legally liable for said debts, and in that event the testator intended that if his estate should be held legally responsible for any of such debts, the liability therefor should be thrown back onto the two sons who were in fact legally and morally responsible therefor. The fact that the testator provided for the adjustment "of other note or debts" that his estate might be required to pay for M. E. or S. A. Kennard does not alter the case. He had theretofore given notes to the amount

of $20,000, secured by lien on the ranch, and had used the money in paying debts incurred by them, and at the time of his death he was surety on a note for S. A. Kennard. The fact therefore that the testator referred to other notes or debts that he might have to pay for said two sons does not create any implication that he intended to assume and pay any of their debts for which he was not otherwise legally responsible. Powell's executor relies on the case of Bullard v. Thompson, 35 Tex. 313. In that case the will provided: "In the first place, I desire that all my just debts be paid, and first those of my sister, Mrs. Mary Ann Richardson, and my uncle, Charles K. Bullard." The testator was referring to debts owing by him to his sister and uncle and not to debts owing by a third party, and the court properly held that his estate was liable for said indebtedness regardless of whether such debts had become barred by limitation. We do not consider the case as controlling in the matter here under consideration.

In support of his contention, Powell's executor, over plaintiff's objection, was permitted to introduce in evidence the testimony of the scrivener who drew the will, as follows: "In giving me instructions for the preparation of the will, and especially this second paragraph, he said to me that about 1921 or 1922 the ranch had gotten in debt something more than twenty thousand dollars, and that he had to borrow money on parts of the ranch to pay it, and that he had instructed Earl and Sterling not to go in debt any more for the ranch, and that he had recently learned that they had gone into debt, that they had a note at the bank, and that they had borrowed some money from Mr. Powell, and he was satisfied that they had obtained credit by reason of the fact that he owned the property and through the influence of his name, and he wanted those debts paid, and he directed that I write the paragraph in this way; that if the ranch owed any debts over and above the two mortgages out there that he wanted them charged and paid out of Earl and Sterling's share."

. Powell's executor contends that this evidence was admissible, and that it makes clear his contention as heretofore presented.

Where the meaning of a will is doubtful, evidence of the circumstances surrounding the testator are admissible so as to put the court as nearly as possible in the same position as was the testator at the time the language was used, for the purpose of enabling the court to read the will in the light of the circumstances under which it was written and thereby discovering the meaning attached by the testator to the words used by him. Such evidence is admissible only for the purpose of explaining the meaning of the language used in the will, for the intent of a testator must be ascertained from the meaning of the words used by him in his will and from those words alone. In other words, the intent must always be drawn from the will, but never the will from the intent. As it is sometimes expressed, it may be shown in certain cases what was intended by the testator by what he actually said, but it is always incompetent by such extraneous circumstances to show what the testator intended to say but did not say. Before such evidence is admissible there must appear on the face of the will sufficient indication to justify the application of the evidence, and the intention as evidenced by such extraneous circumstances must be in harmony and not in conflict with the language of the will. It is never proper to admit extrinsic evidence as to the direct oral declaration of the testator for the purpose of supplying an intention that is not reasonably and legitimately deducible from or that is contrary to or inconsistent with the language used in the will. Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29; City of Haskell v. Ferguson (Tex. Civ. App.) 66 S.W.(2d) 491; Hocker v. Piper (Tex. Civ. App.) 2 S.W.(2d) 997, #3; Jackson v. Templin (Tex. Com. App.) 66 S.W.(2d) 666, 92 A. L. R. 873; Fairfield v. Lawson, 50 Conn. 501, 47 Am. Rep. 669; Farnum et al. v. Pennsylvania Co., for Insurance on Lives & Granting Annuities, 87 N. J. Eq. 108, 99 A. 145; Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013; In re Johnson's Estate, 107 Cal. App. 236, 290 P. 314; 69 C. J. 146 et seq., §§ 1179, 1180; 28 R. C. L. p. 280, §§ 251, 252. Ordinarily when a testator provides in his will for the payment of "debts" out of his estate he refers to debts for which his estate is otherwise legally liable. There is nothing within the four corners of this will to show a contrary intention. If we give effect to the intent of the testator as evidenced by his oral declarations to the scriviner we enlarge the meaning of his will and cause him to as-

sume, without limit, the debts of others and thereby commit him to a policy not reasonably deducible from the language used in his will. This, of course, should not be done.

We sustain the appellants' contention and hold that neither Powell's executor nor plaintiff was entitled to have the notes held by him, evidencing the obligation of the partnership known as "Kennard Ranch," paid as an obligation of the estate of M. L. Kennard, deceased.

 By his will the said M. L. Kennard disposed of all of his property except some vacant lots of small value. The personal property bequeathed in paragraph V (1) of the will has heretofore been disposed of by the executors and the proceeds used in the payment of debts. The vacant lots above referred to are insufficient to pay the balance of the debts of the estate and the expense of administration. It became necessary, therefore, for the trial court to determine which of the other bequests or devises should be abated in order to raise funds necessary to pay the debts of the estate. The trial court ordered that the vacant lots be sold and the proceeds applied to this purpose, and that resort should next be had to the property devised in paragraph V (2) of the will. The plaintiff and several defendants complained of this ruling and contended that resort should first be had to the personal property bequeathed in paragraph IV of the will, and that thereafter the devises contained in paragraphs III and V (2) should be required to contribute rateably for this purpose. We confess that we have had considerable difficulty in deciding this question, but have finally concluded that the ruling of the trial court in this respect should be affirmed. The question is to be controlled by the intention of the testator as reflected by the will and aided, if necessary, by extraneous circumstances consistent therewith. 69 C. J. 976, 977; Page on Wills, § 1309, page 2178. The facts show that the testator had four children by his first wife, to wit, M. E. Kennard, S. A. Kennard, Mrs. Aker, and Mrs. McDonald; and two children by his second wife, to wit, R. R. Kennard and Virginia Kennard. The last wife died prior to his death and all of the property sought to be disposed of by the will was apparently his separate property. Several years prior to his death he had conveyed 243 acres of land to M. E. and S. A. Kennard jointly and had allowed them the free use of the ranch property for a number of years. He had also assumed and paid debts incurred by them to the extent of $20,000. He had conveyed to Mrs. Aker and Mrs. McDonald jointly 283 acres of land. On the day he executed the will, which was about 35 days prior to his death, he conveyed to Mrs. Aker, Mrs. McDonald, and R. R. Kennard each a tract of land, and he also conveyed a life estate in the home place, consisting of 351 acres, to his afflicted daughter, Virginia. These conveyances and the will appear to have been parts of a general scheme on the part of the testator to make an equal distribution of his property among his six children, with due regard to advancements theretofore made to some of them. As before stated, Virginia was subnormal mentally. She was single and had always resided on the home place. The testator had previously deeded to her a life estate in the home place. In his will he named Mrs. Tom Kennard, wife of R. R. Kennard, as trustee of her property. In paragraph IV of his will he bequeathed to her and R. R. Kennard the live stock on the home place, evidently contemplating that she and R. R. Kennard and his wife would reside on the home place, and in this manner she would be provided with a home with her trustee and the means of cultivating the farm. The solicitude shown by the testator in paragraph VI of his will for his afflicted daughter repels the idea that he intended that the property which he had so carefully set aside for her comfort should be the first to which resort should be had for the payment of his debts. Very clearly the bequests in paragraphs III and IV are specific devises. They appear to have been made for the purpose of giving the devisees named therein an advantage to the extent of the property therein bequeathed so as to offset advancements previously made to the other children. There is evidence in the record tending to show that the testator thought that he was disposing of all of his property by paragraph V of the will that had not been otherwise disposed of. In that paragraph he disposed of the bulk of his property and named all of the objects of his bounty as equal beneficiaries. Apparently he thought that by previous paragraphs of his will he had made adequate adjustment for prior advancements so as to put all of his children on an equal footing and was desirous that as to the balance of his property they would share equally. We think it

in keeping with the testator's intention to require that the debts of the estate be paid out of the property devised to all of the objects of his bounty in equal proportions, and that the trial court was correct in so holding. Thompson on Construction of Wills, 357; O'Day v. O'Day, 193 Mo. 62, 91 S. W. 921, 4 L. R. A. (N. S.) 922.

■ The land devised in paragraph III of M. L. Kennard's will was encumbered by a deed of trust in favor of John Hancock Mutual Life Insurance Company to secure the payment of a debt contracted by the testator, which debt exceeded the value of the land. The trial court ordered this debt paid as far as possible out of the property devised in paragraph V (2) of the will in the same manner as other debts of the estate before resort should be had to the mortgaged property. The plaintiff complains of this ruling and insists that the land covered by the deed of trust should be sold first and the proceeds used as far as possible in paying the debt, and that only the balance then remaining unpaid should be a charge against the property devised in paragraph V (2) of the will. We have heretofore held that the property described in paragraph V (2) of the will, after exhausting that bequeathed in paragraph V (1) of the will, was primarily liable for the payment of the general debts of the estate. The debt here under consideration was a personal obligation of the testator, and in the absence of anything in the will to the contrary should be paid, as far as possible, in the same manner as any other debt of the estate, notwithstanding it was secured by lien on specific property. Resort should be had to the mortgaged property only in the event the funds primarily liable for the payment of the general debts of the estate prove to be insufficient for that purpose. 14 Tex. Jur. 184; 69 C. J. 1220; 28 R. C. L. 304; Minter v. Burnett, 90 Tex. 245, 38 S. W. 350.

The plaintiff presents a further proposition to the effect that the John Hancock Mutual Life Insurance Company has permitted the executors of M. L. Kennard's estate to squander or waste the personal property belonging to said estate that was originally available and sufficient to pay all of the debts of the estate, and hence said insurance company has waived its right to have any property other than that covered by its deed of trust applied to the payment of its debt. The facts do not support plaintiff's assumption that the executors have wasted any of the assets of the estate. This assignment is therefore overruled.

The trial court found that prior to the death of M. L. Kennard, M. E. and S. A. Kennard were partners in the business of raising cattle under the firm name of "Kennard Ranch." Joe Collins, one of the defendants who was claiming as assignee under S. A. Kennard, contends that the evidence was insufficient to support this finding. Both M. E. and S. A. Kennard testified to facts sufficient to support the court's finding. Moreover, each of these parties, after the death of their father, executed various deeds of trust and contracts, including the assignment under which Collins claims, in which he affirmed the existence of such partnership relations between the parties. This assignment is overruled.

■ After the death of M. L. Kennard the executors of his estate took possession of all the live stock on the ranch. M. E. Kennard and S. A. Kennard, doing business under the firm name of "Kennard Ranch," claimed title to the live stock on the ranch. A suit by said firm against said estate resulted in an agreed judgment for the sum of $5,000; $1,250 of which was in favor of the attorneys who represented the partnership, and $3,750 in favor of said firm. At the time of the trial here under consideration said firm had ceased to do business and was insolvent, and said judgment for $3,750, known as the "cattle judgment," was its sole asset. The firm owed the Powell notes and notes Nos. 1 and 2 sued on by the plaintiff. The trial court at the request of all parties had assumed control over the matter and was attempting to administer on the firm assets. The plaintiff set up the facts and sought to have the amount due on said "cattle judgment" applied exclusively on the two firm notes held by him. The court denied the prayer and ordered that the funds be applied rateably in the discharge of all the firm debts, that is, the notes held by Powell and notes Nos. 1 and 2 held by plaintiff. No good reason is shown why plaintiff as an unsecured creditor of the firm should have a preference over other firm creditors in the distribution of the firm assets. There was no error in the trial court's ruling in this respect. 47 C. J. 912.

■ It appears that S. A. Kennard assigned to Joe Collins his interest in the "cattle judgment," mentioned in the preceding paragraphs hereof, for the purpose of

securing his individual indebtedness to Collins, and Collins here insists that his claim to the amount due on said judgment is superior to the claims of plaintiff and Powell's executor as holders of partnership obligations. We recognize the right of one member of a firm, with the consent of the others, to apply partnership assets to the payment of his individual obligations and thereby cut off the rights of unsecured firm creditors; but in this case the assignment to Collins was made expressly subject to the claims of the holders of the notes now held by plaintiff and Powell's executor, and in addition the evidence does not support Collins' contention that M. E. Kennard, the other member of the firm, consented to the assignment from S. A. Kennard to Collins. Hence, said assignment from S. A. Kennard to Collins did not defeat the right of M. E. Kennard, the other member of the firm, to have the proceeds of said judgment, as a part of the firm assets, applied to the payment of the firm's debts. 32 Tex. Jur. 367; 47 C. J. 913, 937; Wiggins v. Blackshear, 86 Tex. 665, 26 S. W. 939.

Plaintiff and Joe Collins, as assignee of S. A. Kennard, contended that the indebtedness held by Powell's estate was barred by limitation, and hence said estate was not a creditor of the firm known as "Kennard Ranch" and was not entitled to participate in the distribution of its assets. The original notes held by Powell were more than four years past due at the time the executor of his estate filed his answer herein, but it appears that M. E. Kennard and S. A. Kennard, the sole members of said firm, each by a separate deed of trust acknowledged the validity of said indebtedness within less than four years prior to the time Powell's executor asserted his claim herein. Hence, the trial court correctly held that the claim of Powell's estate was not barred by limitation. Hahl v. Ellwood, 34 Tex. Civ. App. 642, 79 S. W. 829; Howard v. Windom, 86 Tex. 560, 26 S. W. 483; Burnett v. Munger, 23 Tex. Civ. App. 278, 56 S. W. 103; Acers v. Acers, 22 Tex. Civ. App. 584, 56 S. W. 196.

Two of the notes sued on by plaintiff as obligations of the firm composed of M. E. and S. A. Kennard and doing business under the firm name of "Kennard Ranch" were signed "Kennard Ranch by M. E. Kennard." S. A. Kennard and Joe Collins, his assignee, contend that these notes were barred by limitation and further

that they were executed after the dissolution of the partnership, and that by reason thereof M. E. Kennard had no right to bind either S. A. Kennard or the partnership assets thereby. These notes, one of which was for $4,315.34, of date, December 6, 1928, and the other for the sum of $400.40, of date, November 5, 1928, were executed at a time while the partnership was still in existence, and furthermore they were expressly ratified and affirmed as partnership obligations by S. A. Kennard in a deed of trust executed by him of date, August 2, 1929. While these notes were more than four years past due at the time this suit was filed, it appears that the deed of trust signed by the said S. A. Kennard, in which he acknowledged the validity of said indebtedness, was executed after the maturity of said notes and within less than four years prior to the filing of this suit, and as a consequence said plea of limitation was not good. R. S. art. 5539. It is true that M. E. Kennard undertook to renew the note for $400.40 by an extension agreement executed by him in the name of the firm at a time when the firm had probably ceased to do business, and for this reason it is possible that the extension agreement was not binding on either S. A. Kennard or the partnership. However, if it be conceded that such extension agreement was not binding, yet S. A. Kennard and the partnership would remain liable on the old note. Watson v. First State Bank of Dallas (Tex. Com. App.) 237 S. W. 1106. We consider plaintiff's pleadings sufficient to authorize recovery on the old note. These contentions are therefore overruled.

S. A. Kennard and his assignee, Joe Collins, contend that there was no consideration for the execution of the deed of trust by S. A. Kennard and M. E. Kennard, by which they mortgaged their interest in their father's estate to secure the payment of the notes sued on by plaintiff. The trial court found that the deed of trust was supported by a valuable consideration and we think the evidence is sufficient to support the finding. This assignment is overruled.

G. B. Kennard, the plaintiff, is claiming a lien on S. A. Kennard's interest in M. L. Kennard's estate by virtue of a deed of trust signed by S. A. Kennard of date, August 2, 1929. Joe Collins claims under a prior assignment from S. A. Kennard of date, April 3, 1929. The trial court held that Collins' assignment was insufficient to include S. A. Kennard's interest in

his father's estate. Collins assigns this ruling as error. The assignment is too long to copy in full in the opinion. Suffice to say, after the death of M. L. Kennard, the executors of his estate took possession of all of the cattle on the Kennard ranch and claimed them as assets of the estate. M. E. Kennard and S. A. Kennard filed suit against said executors for possession of said cattle, claiming the cattle as their own, and while the suit was pending, by agreement of all of the parties, the cattle were sold and the proceeds deposited in three banks, subject to the outcome of the suit. The suit did not in anywise involve S. A. Kennard's interest in the estate as a devisee under his father's will. In April, 1929, while the cattle suit was still pending and the money was so on deposit, S. A. Kennard executed and delivered to Joe Collins the assignment relied on by him, in which the foregoing facts and other details were recited, and which contained the following language: "Know all men by these presents: That I, Sterling A. Kennard * * hereby sell, assign, transfer and set over unto the said Joe Collins all of my rights, title, claim and interest in and to all of the above mentioned sums of money now on deposit" with said three banks, naming them, "and hereby authorize and direct the said" three banks "and M. E. Kennard, Mrs. Tom Kennard and B. J. Copeland as executors under the will of M. E. Kennard, deceased, to pay unto the said Joe Collins any and all sums of money belonging to or due me by said banks and/or said estate of M. L. Kennard, deceased, which are now due and owing to me and/or which may hereafter become due and owing to me upon disposition of the above mentioned suit pending in the District Court between the said M. E. Kennard and S. A. Kennard, as plaintiffs, and Mrs. Tom Kennard et al., as defendants, whether said suit is disposed of by agreement of the parties or by adjudication of the court. * * *" We think the language used in the foregoing assignment indicates clearly that it was the intention of the grantor therein to assign only the funds due him by virtue of the rights involved in the cattle suit, and that the assignment cannot reasonably be construed to include the grantor's interest in his father's estate as a devisee under the will. We sustain the trial court's ruling in this respect.

One of the tracts of land described in the deed of trust assigned by M. E. and S. A. Kennard, and upon which plaintiff sought a foreclosure herein, did not belong to either M. E. or S. A. Kennard at the time of the execution of said deed of trust, but actually belonged to A. A. Powell, and his title thereto was fully shown by the deed records. After the introduction of evidence had been concluded and while the judgment was being prepared, on next to the last day of the term, Powell's executor discovered for the first time that the plaintiff was seeking a foreclosure of a lien on said land. The trial court thereupon permitted Powell's executor to file a trial amendment claiming title to said land and after hearing additional evidence awarded the title to Powell's estate. Plaintiff was offered the privilege of introducing rebuttal evidence but declined to do so. Plaintiff assigns the ruling of the court in permitting the filing of the trial amendment as error. We overrule this assignment. The matter of permitting the filing of a trial amendment is largely within the discretion of the trial court, and where such amendment has been permitted the judgment will not be reversed on account thereof, unless it clearly appears that there has been an abuse of discretion. 33 Tex. Jur. 521; Continental Paper Bag Company v. Bosworth (Tex. Com. App.) 269 S. W. 83, par. 3, and cases there cited.

The trial court found that M. E. and S. A. Kennard, doing business under the firm name of Kennard Ranch, operated the ranch for a number of years, including the year 1927, under an agreement to pay the annual taxes thereon. They rendered the property for taxes that year in the firm name, but failed to pay the taxes. The estate was compelled to pay these taxes amounting to $979.90, and sought to recover for same in this suit. The trial court was of the opinion that since in the settlement of the cattle suit the estate was awarded title to all the personal property on the ranch in consideration of the payment of $5,000 to the partnership, the taxes for the year 1927 should be prorated between the partnership and the estate in the proportion that the $5,000 bore to the value of the personal property, and as a consequence the estate was allowed to recover only the sum of $362.56. In our opinion, this was error. The firm's agreement to pay taxes for the use of the property was not contingent upon recovery of the personal property and in the settlement of the cattle suit there was no agreement to release the firm from liability to pay any

part of said taxes. The firm had the use of the ranch for all of the year 1927 and should have been required to pay all taxes due thereon for that year.

The part of the judgment herein appealed from, wherein the trial court adjudged the indebtedness represented by the two partnership notes held by the Powell estate and the two partnership notes held by plaintiff to be charges against the estate of M. L. Kennard, deceased, and ordered same paid as bequests under said will out of the property devised in paragraph V of said will, is reversed and judgment is here rendered denying such right. That part of the judgment wherein the trial court decreed the amount due by the partnership composed of M. E. and S. A. Kennard to the M. L. Kennard estate for taxes for 1927 to be the sum of $362.56 is reversed and in lieu thereof judgment is here rendered in favor of said estate for the sum of $979.-90. The judgment of the trial court in all other respects is affirmed.