**MAXEY et al. v. QUEEN et al.**

No. 14874.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 31, 1947.

Rehearing Denied Dec. 5, 1947.

Gladys Melton and Wm. Madden Hill, both of Dallas, for appellants.

Smithdeal & Lefkowitz and Shook & Shook, all of Dallas, for appellees.

SPEER, Justice.

This appeal involves a will contest. Ola May Maxey, joined by her husband, proposed the probate, in the County Court, Dallas County, Texas, of the will of Mattie Jackson, deceased. Arthur Queen and Charlie Queen contested the probate of the proposed will. Ola May Maxey is a sister, and Arthur and Charlie Queen are brothers of Mattie Jackson, deceased. The parties will be referred to in this opinion as proponents and contestants, respectively.

The County Court entered the proposed will for probate and contestants appealed

to the District Court. The pleadings of all parties were amended in the District Court and the issues were tried de novo.

It is unnecessary to state in detail the nature of the respective pleadings, but it will suffice to say that proponents' amended pleadings in the District Court contained all necessary statutory requirements in such matters. The original application filed in the County Court alleged that the proposed will was filed therewith. It may be assumed that the instrument went to the District Court when the appeal was perfected. Contestants' amended pleadings in the District Court consist of many special exceptions, a general denial and special pleas, the latter being substantially the same as the special exceptions urged. The trial court overruled the special exceptions and tried the case on the amended pleadings of the parties.

The general denial of contestants was in the usual and customary form but bears this parenthetical clause, "except that the writing referred to and offered by petitioner was written by Mattie Jackson in her own hand, which is admitted."

The subsequent paragraphs of contestants' answer by way of special pleas are in substance: (a) That the proposed writing is not testamentary and therefore not a will because it does not purport to dispose of any property. (b) That the proposed instrument quoted by contestants as interpreted by the trial court does not contain language of testamentary intention, nor any words which could be properly construed to mean that the purported testatrix had a testamentary intention at the time of writing the document proposed as her will. The answer contained a photostatic copy of the proposed will.

A jury was demanded and empaneled in the District Court and the proposed will of Mattie Jackson was presented to a witness for identification as being in the handwriting of testatrix. Objection was made to the testimony upon the ground that contestants had admitted in their answer that the document was written wholly in the handwriting of testatrix. No definite ruling on the objection seems to have been made by the court, and the witness, a form-er assistant district attorney, said the instrument was in the handwriting of testatrix.

Contestants renewed their objections and the court remarked that the instrument had not been offered in evidence and counsel for proponents said they expected to offer it. The court then said: "When it is offered, the court will rule that it does not show on its face any testamentary intent." The court went on to state in that connection, substantially, that since contestants were objecting to testimony of all extraneous circumstances surrounding the matter, he would hear the testimony to be offered by proponents, without the presence of the jury, to enable him to pass on the objections in the absence of the jury. The jury was then sent by the court to their room. Proponents objected and excepted to the actions of the court and offered quite a bit of testimony to perfect their bills of exception and in an effort to induce the court to overrule the objections. In the absence of the jury proponents proved substantially that Mattie Jackson, deceased, was an illiterate Negro woman, having little or no educational advantages, had worked for white families as a domestic servant for many years; that her health had failed and her employers sympathized and respected her; that they took her to the hospital; that she sat in the hospital most of the day waiting for an assigned room; that none could be had that day; that while she sat waiting, she wrote something on a sheet of tablet paper; that deceased had told numerous persons prior to the day she was first taken to the hospital that she wanted proponent to have her property; that after she had written the document or script at the hospital she told others that she had fixed it so her sister Ola May would get her property if anything happened to her; that Mattie Jackson was returned to the hospital and died about seventeen days after she was taken there the first time.

The trial court declined to permit the testimony referred to by us to go to the jury, for the reason assigned by him at the time in this language: "Well, in the view the court takes of the law of the case, no purpose could be served by permitting the

testimony to be heard by the jury, because the court, under this testimony, would instruct the jury to return a verdict. So, I can't see where anything could be gained by permitting the jury to hear it. Furthermore, the court is of the opinion that the instrument offered here is not a will, and does not contain on its face testamentary intent. Taking that view of the matter, the court would be compelled to sustain the objections of the defendant to the testimony offered, seeking to explain, or testimony giving the circumstances surrounding the execution of the instrument. * * *"

After the testimony was concluded, the court entered his judgment denying the probate of the proposed instrument. Omitting the formal parts and recitations of the appearances of parties, and the empaneling of the jury, the court found as a fact that the instrument proposed as the last will of Mattie Jackson, deceased, contained the following language, words and punctuations:

"Dallas Texas

"I am sick in the horse pittle. I have been sice for some times have been able to get down to the corthouse I wont my deads male to my sister. Ola May Maxey.

"Mrs. Mattie Jackson
"6603 Lemmon Av."

The judgment goes on to recite that proponents called several witnesses, naming them, who proposed to testify that they had heard Mattie Jackson say in substance that she had fixed things so that Ola May Maxey would get her property. That contestants objected to the questions and answers and the court retired the jury and heard arguments on the admissibility of the testimony and that "the court was of the opinion that inasmuch as the paper offered for probate does not contain words showing that the writer intended to make a gift and does not express testamentary intention, parol testimony showing or tending to show that Mattie Jackson had said that she wanted her sister, Ola May Maxey, to have her property, or that she thought she had fixed matters so that Ola May Maxey would get her property, was not admissible because the Statutes of this State, when properly construed, deny testamentary effect to such parol declarations."

The judgment further recites substantially that after the court had ruled that the paper offered for probate was not a will and not a paper that can be converted into a will by parol testimony, proponents were allowed to call and examine witnesses out of the presence of the jury in order that a record might be made of all the testimony proponents would offer if the court should rule parol testimony admissible for the purpose of showing a testamentary intent that cannot be discovered in the language of the paper itself.

The judgment concludes with the formal decree denying the proposed document to be probated as the last will and testament of Mattie Jackson, deceased.

Proponents excepted to the judgment, gave notice of and have perfected this appeal.

Under an order of the Supreme Court equalizing the dockets of the Court of Civil Appeals, the case has been transferred to this court for determination.

Proponents (appellants) rely upon four points of error for reversal. In their brief, proponents group the first three points and summarize them as complaining of the court's refusal to permit them to introduce before the jury evidence respecting the facts and circumstances under which Mattie Jackson executed the instrument sought to be probated and her declarations prior and subsequent to its execution; and peremptorily discharging the jury without permitting it to hear the evidence, and in holding that the instrument, either considered alone or in the light of the facts and circumstances surrounding its execution, did not evidence testamentary intent on her part.

The fourth point complains and assigns error because the court refused to admit the proposed instrument to probate, assigning as a reason, because testamentary intent was shown upon the face of the instrument and from the undisputed facts of all the surrounding circumstances under which deceased executed the instrument as shown by the testimony offered by proponents and excluded by the court from the jury.

In the view we take of this entire record, we think there are only two material ques-

tions presented for our determination. They are: (1) Does the document as interpreted by the court on its face express a testamentary intent and constitute a will under the statutes of this state? And (2) did the trial court err in excluding from the jury the proposed testimony tendered by proponents, and to permit the jury to determine as a fact whether or not the proposed instrument, such as it is, evidenced a testamentary intent upon the part of deceased?

█ The right of a person who owns property in this state to give, bequeath or devise it to another at his death is purely statutory. Our statutes do not define in so many words what form an instrument shall take before it becomes a will. 44 Tex.Jur. 543, sec. 3.

█ Under Article 8283, R.C.S., Vernon's Ann.Civ.St. art. 8283, all wills (except nuncupative) must be in writing. The instrument proposed here was admittedly in the handwriting of the deceased. We may then well ask ourselves the question, what is a will? In Williams v. Noland, 10 Tex. Civ.App. 629, 32 S.W. 328, 329, writ refused, the court quotes from Jarman on Wills and holds the definition of a will to be " 'An instrument by which a person makes a disposition of his property, to take effect after his decease, and which, in its own nature, is ambulatory and revocable during his lifetime.' "

█ Bearing in mind the above recognized meaning and definition of a will as contemplated by our statutes, we look to the document or instrument proposed in this case in an effort to discover whether or not it meets the requirements of the definition given. The phraseology, spelling and punctuation are of little importance in the interpretation of what is said in a will. As we view the instrument now before us, it is of no consequence that the writer was sick in a hospital or that she had been sick for sometime, or even that she had been able to go to the courthouse. The only language that has a semblance of being testamentary in nature, and whether or not the writer of the instrument made or attempted to make a disposition of her property to take effect

after her death, is found in the final clause reading "I wont my deads male to my sister. Ola May Maxey." Proponent, Ola May Maxey, contends that the instrument in fact reads: "I wont my deads *made* to my sister. Ola May Maxey." Contestants contend that the instrument plainly reads, as interpreted by the court: "I wont my deads *male* (mailed) to my sister Ola May Maxey."

There is no assigned error to the interpretation given by the trial court to the instrument. Whether he interpreted the writing to state "male" and not "made" we fail to see any material difference in the result to be reached irrespective of how the word referred to is read. If the instrument be read as contended by proponents, "I want my deeds made to my sister Ola May Maxey" or as contended by contestants, "I want my deeds mailed to my sister Ola May Maxey," it resolves itself back into the legal determination of whether or not there was a disposition made by decedent of her property to take effect at her death.

█ There are few if any subjects known to our jurisprudence which have elicited more judicial writings than that of wills. It is the settled rule in this state that our courts will go far to give effect to the written testamentary instruments of deceased persons, when such instruments come within the meaning of our statutes relating to wills. However, our courts have no authority to make a will for a deceased person when he has not done so in his lifetime.

█ By briefs of the parties many cases are cited in support of their respective contentions; to review all would unnecessarily extend this opinion. The settled rule seems to be that, primarily, the nature and effect of a proposed writing is to be determined by the language used. If, however, the judicial conscience is left in doubt as to the intention of the maker, resort may be had to extraneous matters. Likewise, when it is possible to do so, the intention of the maker will be gathered from the face of the instrument, but if the language used is ambiguous or of doubtful meaning, resort should be had to sur-

rounding facts and circumstances which tend to disclose the intention of the writer. 44 Tex.Jur. 549, sec. 8; Low v. Low, Tex. Civ.App., 172 S.W. 590, writ refused; Adams v. Maris, Tex.Com.App., 213 S.W. 622, 624.

In the last cited case, in which the Supreme Court adopted the opinion of the Commission of Appeals (a case especially relied upon by proponents), the court had before it three scripts or writings: (1) An envelope with the name of "Henry Boyce" and the word "notes" written on it. (2) Inside the envelope was a writing of the proposed testator, saying: "Henry please except this you & F. Y. Adams for the kindness shown me." (Signed) "E. Vanlaw." (3) Also in the envelope was a note partly in printed form with blanks filled in and signed by Vanlaw. The controversy was whether or not all the writings, including the note, constituted Vanlaw's will. The court held, for reasons therein stated, that it was proper for the trial court to hear evidence of all the surrounding circumstances and from the various writings and such evidence determine if Vanlaw's intentions thus expressed were testamentary under the law. The court wrote at length on our laws in such matters, drawing the very nice distinctions between the general rules applicable to the trial court's duty to construe plain and unambiguous instruments and those which were of doubtful meaning. We will not assume to improve upon what was there said in announcing the correct rule. The court said: "While our statute on wills requiring that they be in writing (except nuncupative) precludes ascribing to the testator any intention not expressed in the will, still there is an obligation to give effect to the intention which the will properly expounded contains. Therefore evidence is admissible which in effect simply explains what is written. The question is, not what the testator intended to write, but what the meaning is of the words he wrote. Wigram on Wills, § 53. It is a general rule that, when the language of a will is clear, extrinsic evidence cannot be adduced to contradict, enlarge, explain, or qualify its meaning."

In the cited case (Adams v. Maris) we think it clear from the opinion that it was considered that Vanlaw had, by his writing, made a gift, in the form of a note which would be a charge against his property. The language used rendered it uncertain as to when the gift would take effect, whether instantly or at his death; that being true there was such doubt in this respect as made it proper to admit evidence of extraneous circumstances to render certain the effective date of the gift. In the instrument now under consideration we see nothing that could be construed to mean that Mattie Jackson was making a gift, to be effective either at the time of the writing or at her death. Turning again to the Adams v. Maris case, supra, and applicable to the question under consideration, we must concede that evidence of extraneous facts and circumstances is admissible "which in effect simply explains what is written. The question is, not what the testator intended to write, but what the meaning is of the words he (she) wrote." In the instant case, the controversial words were: "I wont my deads male to my sister. Ola May Maxey." To be testamentary, the language used must be susceptible by fair construction to a meaning that the instrument was to pass title to property when entered for probate.

Let us suppose the instrument in controversy had been probated by the trial court; since the instrument names no executor, a subsequent administrator cum testamento annexo may be appointed and if he should undertake to execute the terms of the will as probated, just what could he do? Clearly he could not execute a deed in the name of Mattie Jackson, for she alone could have done that in her lifetime. If the language of the instrument was properly interpreted by the court, the administrator could only mail deceased's deeds to her sister, Ola May Maxey, but in either event no property rights would pass to Ola May. Without a court construction it could not serve as a muniment of title.

It may be said that the foregoing instanced circumstance would involve the construction of a will and that upon a hearing to determine if an instrument is to be

probated its construction is not involved. As a general rule this is correct, but it is equally true that when the court has for consideration an instrument offered as a will or codicil, the court must consider the language used in determining whether or not the instrument is testamentary in nature, whether this be a "construction" or an "interpretation" or "determination" of the meaning of the words used; to this extent a "construction' is involved in the probate of every instrument proposed as a will. Hohmann v. Langehennig, Tex.Civ.App., 153 S.W.2d 1011, affirmed by Supreme Court in 139 Tex. 452, 163 S.W.2d 402.

The rules of law applicable to a "construction" of a will in actions brought for that purpose are not materially different in principle from those governing "interpretation" and "determination" when an instrument is proposed as a will for probate. In Kennard v. Kennard, Tex.Civ. App., 84 S.W.2d 315, 320, writ dismissed, the Waco Court of Civil Appeals had before it a complicated situation involving the construction of a provision in a will that had been probated. The court, speaking through then Associate Justice Alexander, re-announced substantially all of the principles relating to the admissibility of evidence concerning extraneous circumstances in explanation of what was said in the will, as are to be found in the Adams-Maris case, supra, but in slightly different language. There the court said: "* * * The intent (of testator) must always be drawn from the will, but never the will from the intent. As it is sometimes expressed, it may be shown in certain cases what was intended by the testator by what he actually said, but it is always incompetent by such extraneous circumstances to show what the testator intended to say but did not say. * * *" (Citing many authorities.)

In the case before us, the purported testatrix may have intended to say that she was giving, devising or willing all or a part of her property to her sister, Ola May Maxey, but it is obvious that she did not say that in the instrument proposed as her will. Nor did she use language which could reasonably be interpreted to mean that; her language is not ambiguous in this respect.

In their insistence that the court should have permitted the jury to hear evidence of extraneous circumstances surrounding deceased at the time she wrote the proposed instrument, proponents lay much stress upon the fact that Mattie Jackson was an illiterate Negro woman and could not be expected to couch her intentions in the same phraseology as would have been written by an educated person, learned in the law; they argue that these circumstances would have shed light on the intentions of Mattie Jackson when she wrote the document proposed as her will. The excluded testimony of which complaint is made, such as that decedent was an illiterate domestic servant, that she had previously said she wanted Ola May to have her property, and after writing the document, that she had it fixed so Ola May would get her property if anything happened to her, could not establish a will nor supplant the absent testamentary intention into the proposed instrument. The proposed testimony did not tend to explain what decedent meant by what she had said in the instrument, but in fact would have materially enlarged and added an all important element to what she had written. This cannot be done. Kennard v. Kennard, supra.

We conclude that the proposed instrument did not contain language of a testamentary nature, nor use language which could be reasonably construed to mean such; that the language used was not ambiguous as to what decedent's intentions were with respect to a disposition of her property; that the meaning of the language used, being unambiguous, needed no explanation. That in the circumstances revealed by this record, the trial court committed no error in withdrawing the case from the jury and finding that the proposed instrument was not testamentary in its nature, and refusing to admit to probate. Therefore, all points of error are overruled and the judgment should and will be affirmed.