### CASHION et al. v. CASHION.
### No. 2979.

Court of Civil Appeals of Texas. Waco.
Sept. 20, 1951.

Rehearing Denied Oct. 11, 1951.

See also, Tex.Civ.App., 239 S.W.2d 742.

T. Wesley Hook, Alvarado, for appellants.

H. Miller, McPherson, Cleburne, for appellee.

HALE, Justice.

Appellee is the surviving widow of R. L. Cashion who died in 1938. She instituted a suit in the district court of Johnson County in 1950 against appellants and others for the partition of 95½ acres of land situated in that county, alleging in her petition the share owned by her and each of the other joint owners thereof. Appellants thereafter filed their application in the county court of Johnson County to probate a claimed will of R. L. Cashion which they alleged they could not produce in court because it had been lost or mislaid. This application was contested by appellee, was denied in the county court and on appeal to the district court it was consolidated with the partition suit of appellee. Appellants alleged in the consolidated suit that under the terms of the lost will of R. L. Cashion their shares in the 95½ acres of land were greater than the shares set forth in appellee's petition for partition and in the alternative, if the lost will could not be admitted to probate, they further pleaded that

R. L. Cashion, at the time of his death, held the legal title to the 95½ acres in trust for their use and benefit.

The consolidated case was tried before a jury. Upon the conclusion of the evidence, however, the trial court instructed the jury to return a verdict in favor of appellee and against appellants because the court was of the opinion that "there is not sufficient evidence proving up a will of R. L. Cashion to justify the probate thereof, and that the facts do not show the creation of a trust in said property for the defendants." Thereupon, the court rendered judgment decreeing a partition of the land in controversy, fixing the fractional amounts of the joint owners thereof, finding the land incapable of an equitable partition in kind and appointing a receiver to sell the same for the purpose of effecting the decree of partition.

Appellants predicate their appeal upon the contention that the competent evidence adduced at the trial of the case, when viewed in the light most favorable to them, was sufficient to justify the probate of the lost will of R. L. Cashion or, in the alternative, to establish the existence of a trust for their benefit, as alleged by them. Consequently, they say the trial court erred in peremptorily instructing the jury to return a verdict in favor of appellee and against them.

In support of the foregoing contention appellants rely primarily upon the testimony of R. A. Cashion given by deposition on written interrogatories. This witness testified that he was a brother of R. L. Cashion, deceased; that he was present at the home of his brother in March of 1938 when the latter celebrated his last birthday prior to his death in July of that year; that another brother, Rudolph, and appellee were also present on that occasion; and that the question came up at that time as to whether or not R. L. had made his will. The witness further testified as follows: "R. L. was telling me how he wanted the place to go and my brother, Rudolph, asked him if he didn't have a will to that effect. My brother asked him the question as to whether he had made his will. He said he had filled out some papers but they had

been misplaced and he couldn't find them. He said his wife would collect the rent off of the place as long as she lived, and then everything on the place and the place would go to his sister's three boys (they being the appellants herein), he said 'You know they worked and made it'. He said he had fixed it so that the old place would go to the three boys, and that they had worked and made it, and it was theirs and that's the way he had fixed it."

■ Arts. 3344-3349 of Vernon's Tex. Civ.Stats. relate to the probate of wills. Art. 3348 thereof specifies the facts which must be proved before admitting a will to probate. Art. 3349 provides in effect that if a will which is offered for probate cannot be produced in court, the cause of its non-production must be proved with reasonable certainty and "the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read." We find no evidence in the record before us, other than the testimony of R. A. Cashion as above set forth, which shows or in any wise tends to show that R. L. Cashion ever signed a will of any kind, or if so as to whether such will was written wholly by the testator or signed by him in the presence of proper witnesses, or as to whether such will was executed with the formalities and solemnities and under the circumstances required by law to make it a valid will, as to when the same was so signed, or as to what the contents thereof might have been. In our opinion the testimony of R. A. Cashion was lacking in probative force to meet the essential requirements of the statutes with respect to the probate of wills. Therefore, we hold that the evidence in the case was wholly insufficient to form the basis for such legal inferences as were necessary to justify the admission of any will of R. L. Cashion to probate in this proceeding. Tynan v. Paschal, 27 Tex. 286; Adams v. Maris, Tex.Com.App., 213 S.W. 622; Clover v. Clover, Tex.Civ.App., 224 S.W. 916 (er. ref.); Kennard v. Kennard, Tex.Civ. App., 84 S.W.2d 315, (er. dis.); Maxey v. Queen, Tex.Civ.App., 206 S.W.2d 114 (er. ref. n.r.e.).

■ We are also of the opinion that the evidence as a whole, when viewed in the light most favorable to appellants, was insufficient to show that R. L. Cashion, at the time of his death, held the legal title to any part of the 95½ acres in trust for the benefit of appellants. Mrs. Dora Nolen, the mother of appellants, was a sister of R. L. Cashion. There was evidence to the effect that after Mrs. Nolen became a widow she and her three sons lived in the home of R. L. Cashion, then a single man, for a number of years, beginning about the year 1892. Each of the three boys worked in the fields of their uncle from the time they became old enough to do so until they grew to manhood, Clifford Nolen being the last to leave the home of his uncle in 1916. They did not receive any wages for the services rendered by them, the only compensation for such services being the board and lodging which their uncle provided for them and their mother while they were living in his home. However, there was no evidence as to the value of the services rendered by them or the value of that which they and their mother received from their uncle while living in his home. Furthermore, the undisputed evidence shows that R. L. Cashion acquired the legal title to the 95½ acres in controversy by deed dated September 3, 1908, paying $2,515 in cash and assuming the payment of an outstanding indebtedness in the sum of $3,500. By deed dated November 24, 1908, he conveyed to appellants an undivided 1/3 interest in the 95½ acres and an additional 80 acres in consideration of the agreement of appellants to pay 1/2 of the outstanding indebtedness against the 95½ acres. After each of the appellants had left the home of their uncle each, for a valuable consideration, reconveyed to him the interest which each had previously acquired from him in the 95½ acres. In the latter part of 1908 appellee married R. L. Cashion and the outstanding indebtedness against the 95½ acres in the sum of $3,500 was paid off with community funds belonging to appellee and her husband.

■ In disposing of this case we cannot ignore the provisions of art. 1288,

Vernon's Tex.Civ.Stats., and other related provisions commonly known as the statute of frauds. If in contemplation of law R. L. Cashion held the legal title, at the time of his death, to any part of the 95½ acres in trust for the benefit of appellants, when did such trust arise, what was the nature or classification of the same and what were the ultimate facts upon which it was based? We find no satisfactory answer to any of these specific questions in the brief of appellants or in the record before us. Since the evidence was insufficient to establish the existence of a valid will of R. L. Cashion at the time of his death in 1938, it necessarily follows that the evidence was lacking in probative force to impress such will with a testamentary trust. Furthermore, it appears to us that any trust which might possibly have arisen in 1908 when R. L. Cashion acquired legal title to the 95½ acres, whether such trust was express or implied, and whether it be regarded as a constructive or resulting trust, undoubtedly ceased to exist when the alleged trustee thereafter conveyed a substantial interest in the legal title to appellants and they reconveyed the same to him for a valuable consideration.

Because we have concluded that the trial court did not err in withdrawing the case from the jury, the judgment appealed from is affirmed.