Vera HARPER et vir., Appellants,

v.

Mary MEYER, Appellee.

No. 12779.

Court of Civil Appeals of Texas.

Galveston.

Jan. 13, 1955.

Rehearing Denied Feb. 3, 1955.

80 original Humbel Stock
100 + from coupons
some more since which are in her box—225.72 every
three months you want Mrs. Meyer to divide equal-
ly between

Mrs. Mary Meyer
The twins
Verva Harris
Vera Harper
Cora Roos

Signed by
March 24 — 1953

| | |
|---|---|
| Mrs. M. Summers | (Signed) Mrs. M. M. Summers |
| Cora Roos | (Signed) Cora Roos |
| Mrs. Mary Meyer | (Signed) Mrs. Mary Meyer |

In their brief, appellants state that the essential facts are substantially as follows: Appellee filed an application in the County Court of Galveston County, Texas, to probate an instrument dated October 29, 1951, as the last Will and Testament of Mary Maybell Pauls Summers, Deceased. Thereafter, and before the County Court had acted on said application, Miss Cora Roos filed an application in the County Court of Galveston County, to probate the instrument copied above as a codicil to such will. Thereafter, and before a hearing by the County Court on said applications, appellants, Vera Harper and her husband, with permission and leave of Court, filed their petition in intervention, adopting the pleadings of Cora Roos. During the trial of the cause in the County Court, Cora Roos, in open court, moved to withdraw and dismiss her application, which motion was granted by the court. After the hearing, the County Court admitted to probate as the least will and testament of the deceased the instrument dated October 29, 1951, which had been tendered for probate by appellee; and denied to probate the asserted codicil tendered by appellants. Appellants then resorted to the District Court of Galveston County, wherein, after a trial before the court without a jury, judgment was entered, again admitting to probate the instrument dated October 29, 1951, and refusing probate of the instrument dated March 24, 1953 which is copied above. At no time in the proceedings was any attack directed to the admission to probate of the instrument dated October 29, 1951. For the purposes of this discussion, it is sufficient to state that it is couched in formal testamentary language, and makes specific

Philip M. Shafer, Houston, for appellant.

Wigley, McLeod, Mills & Shirley, Galveston, and John A. Croom, of Houston, for appellee.

HAMBLEN, Chief Justice.

This is an appeal from a judgment of the District Court of Galveston County, refusing to admit to probate an instrument propounded by appellants, Vera Harper and her husband, as a codicil to the last will and testament of Mrs. Mary Maybell Pauls Summers, deceased. The tendered writing appears in the transcript in the following form:

disposition of the decedent's estate to named beneficiaries, included among whom are the appellant, Vera Harper, the appellee, Mrs. Mary Meyer, Cora Roos, and Verva Harris. Among the bequests to Mrs. Mary Meyer is one of "all stock in any company". Mrs. Mary Meyer is appointed independent executrix without bond.

This appeal is only from that portion of the trial court's judgment which denies probate of the copied writing as a codicil to the will of the deceased. In that respect, the judgment is attacked in fifty-eight points of error, wherein complaint is made of certain findings of fact and conclusions of law made by the trial court, and of the failure of the court to make certain findings and conclusions requested by appellants. We refrain from stating with particularity wherein it is contended that the court has erred so prodigiously, because, to do so would not only unduly extend this opinion, but is not, in our view, necessary to a proper disposition of the issues presented by the record before us. Examination of the findings and conclusions made by the trial court, discloses that probate of the tendered writing was denied for two reasons: first, because the instrument was not testamentary, and last, because it was not executed in the manner and with the formalities required by law to entitle it to probate as a testament. We are of the opinion that the judgment should be sustained for either or both of the stated reasons.

■ The right of a person who owns property in this State to give, bequeath or devise it to another at his death is purely statutory. Our statutes do not define in so many words what form an instrument shall take before it becomes a will. That question, however, has been the subject of prolific judicial writings in this and other jurisdictions. One definition of a will which has been frequently quoted with approval in this State is stated as follows, in Williams v. Noland, 10 Tex.Civ.App. 629, 32 S.W. 328, 329, (writ refused): " 'an instrument by which a person makes a disposition of his property, to take effect after his decease, and which, in its own nature, is ambulatory and revocable during his lifetime.' " Except, in the case of nucupative wills, with which we are not here concerned, Art. 8283, Vernon's Ann.Tex.St. requires that all wills must be in writing. Other statutes prescribe the formalities under which the writing must be executed. Therefore, in order for a will to exist, three requirements must be met. There must be (except nuncupative wills) an instrument in writing, which writing is executed in the manner prescribed by the statutes, and which writing possesses the characteristics of a will as above defined. If a writing in substance embodies the factors above enumerated, the phraseology adopted by the draftsman is of no consequence. In Ferguson v. Ferguson, 27 Tex. 339, the Supreme Court states the rule as follows: "However irregular it may be in form, or in-artificial in expression, it is sufficient if it discloses the intention of the maker respecting the disposition of his property and that it is intended to take effect after his death, and is in its nature ambulatory and revocable during his life." Whenever an instrument possesses the characteristics mentioned, but due to incorrect or inartful wording leaves a doubt as to the meaning or intention of the purported testator, courts are authorized to liberally admit and consider evidence extraneous to the instrument itself for the purpose of resolving such doubt. But if the instrument does not possess in some degree the essential characteristics of a will as above defined, sufficient, at least, to give rise to the doubt, extraneous evidence cannot supply that which is otherwise totally lacking. In Maxey v. Queen, Tex.Civ.App., 206 S.W.2d 114, 117, the following language is used: "It is the settled rule in this state that our courts will go far to give effect to the written *testamentary* instruments of deceased persons, when such instruments come within the meaning of our statutes relating to wills. However, our courts have no authority to make a will for a deceased person when he has not done so in his lifetime." (Emphasis ours.)

■ It is our opinion that the instrument here involved fails to meet the stated requirements of a testamentary document. Failing as it does to disclose whose intention it might be evidence of, what property it has reference to, in fact whether it is the witnessed declaration of one individual, or the mutual contractual obligation of three principals, and particularly failing to indicate any intention to make a bequest effective after death;—all of these mentioned factors characterize the writing as one so lacking in testamentary character that extraneous evidence should not be considered to prove an intention on the part of the deceased which is in no degree disclosed by the writing itself. Unaided by extraneous evidence, the writing does not meet in any degree the requirements of a will as stated in Williams v. Noland, supra, and Ferguson v. Ferguson, supra. For that reason, we think that as a matter of law, probate was properly denied, and the trial court's judgment should be affirmed.

■ However, if we are mistaken in the conclusion stated, and have applied a concept of testamentary requirements not intended by the cited authorities, then, in any event, it requires no citation of authority to support the proposition that the extraneous evidence which this record contains, and which we will discuss, and for that matter, any extraneous evidence which could be offered, could no more than raise an issue of fact as to testamentary intention, to be determined by the trier of the facts. In this case, the trial court, in that capacity, found as a fact that the deceased did not intend that said instrument be a codicil to her last will and testament, or that same be her will, or that same be a testamentary instrument. This finding, supported as it is by evidence which we have declared to be legally conclusive, is in any event supported by evidence of probative value, and compels an affirmance of the trial court's judgment.

■ Among the findings of the trial court, in addition to that last mentioned, is one to the effect that the instrument dated March 24, 1953 was not executed and witnessed with the formalities required by our laws to make it a valid codicil or testamentary instrument. Evidence on this issue consisted for practical purposes entirely of the testimony of the witness, Cora Roos, who after filing an application for probate of the disputed instrument, withdrew such application, and disclaimed interest in the bequest which she had theretofore asserted. This witness testified that she and Mrs. Mary Meyer were, on March 24, 1953, in the home of the deceased, who was at that time confined to bed by an illness from · which she subsequently died. The deceased expressed a wish to make a codicil to her will, and requested that her wishes be reduced to writing. Mrs. Meyer thereupon handed the witness a paper and pen. The deceased stated her ownership of shares of stock in the Humble Oil & Refining Company, which she described as being evidenced by a certificate for 80 shares, a certificate for 100 shares, and some additional shares, all of which were in her safe deposit box, and which produced an income of $225.72 every three months. She expressed the desire to bequeath this stock equally to Mrs. Meyer, Verva Harris, Vera Harper, the latter being referred to by her as "The twins", and Cora Roos. Thereupon the witness, at the direction of Mrs. Meyer, wrote the instrument in dispute, and the deceased, the witness Cora Roos, and Mrs. Meyer signed it in the presence of each other. Mrs. Meyer thereupon at the request of the deceased, pinned the writing to the formal will, contained in an envelope marked "Will", and deposited it in the dresser drawer in the deceased's bedroom. The evidence is undisputed that when the envelope was opened after the decedent's death, the writing was attached by pin to the formal will.

It is appellant's contention that this undisputed testimony must be accepted by the court, and that there is a total lack of support for the finding that the instrument was not executed with the formalities required to make it a valid testamentary instrument.

It is to be borne in mind that this is not a situation wherein the court has held as

a matter of law that there is no proof of proper execution, but is one wherein the court, as the trier of the facts, has so found. As opposing the testimony of the witness, which we have mentioned, it is pointed out that the court was entitled to consider the circumstance that the deceased had previously executed a formal will wherein is evidenced on her part a realization of the extent and nature of her estate, and the objects of her bounty. The evidence is conclusive that on the date of the purported codicil, the deceased owned 396 shares of Humble stock, evidenced by certificates in varying denominations, none of which, however, was in an amount of 80 shares. Under such circumstances, we feel, the court, in his capacity of fact finder, was justified in disbelieving and rejecting the uncorroborated testimony of this one witness, and in view of the burden of proof, making the negative finding which he did.

One other circumstance should be mentioned. It was proven that on October 29, 1951, the deceased signed the formal will in the presence of only one subscribing witness. Thereafter, at some undisclosed date, but admittedly subsequent to March 24, 1953, the deceased, in the presence of the same witness who had theretofore subscribed the instrument, and in the presence of an additional witness, again declared the instrument to be her will, and requested the additional witness to subscribe it, which she did, in the presence of both the deceased and the first witness. The appellant contends that since the disputed writing was at that time pinned to the back of the formal will, this action constituted a formal execution of it, as well as the formal will. The witnesses to the formal will both testified that they did not know that the disputed instrument was attached. The trial court found that it was so attached, but, again rejecting the testimony of the witness, Cora Roos, found that it had not been so attached at the request of the deceased, that the deceased did not know it was so attached, and did not intend a re-execution of it. This finding, which we feel the record supports, compels the conclusion that the deceased, by her de-scribed action, republished her formal will subsequent to the date of the disputed writing, and since the provisions of the formal will conflicted with those of the disputed writing, such republication amounted in law to a revocation of the disputed instrument, if it ever was in fact an executed testamentary document.

The considerations which we have mentioned, compel an affirmance of the judgment of the trial court, and render unnecessary any further discussion of the appellant's many contentions.

Affirmed.